## STATE v. GEORGE DIXON.

A Judge is not justified in expressing to the jury his opinion that the defendant is guilty or not guilty upon the evidence adduced.

One may oppose another attempting the perpetration of a felony, if need be, to the taking of a felon's life; as in the case of a person attacked by another, intending to murder him, who thereupon kills his assailant. He is under no obligation to fly.

But if the assault is without any felonious intent, the person assaulted may not stand his ground and kill his adversary, if there be any way of escape open to him, though he is allowed to repel force by force and give blow for blow. The character of such assault, with its attending circumstances, should be submitted to the jury, with instructions as to the legal effect of their finding upon it.

(*State* v. *Harris*, 1 Jones, 190; *Roane's case*, 2 Dev., 58; *Scott's case*, 4 Ired., 409; *State* v. *Floyd*, 6 Jones, 392; *Massager's case*, 65 N. C. Rep., 480; and. *State* v. *Yancey*, 74 N. C. Rep., 244, cited and approved.)

INDICTMENT for *Manslaughter*, tried before MOORE, J., at January Term, 1876, of EDGECOMBE Superior Court.

The facts, necessary to an understanding of the case, as decided, are fully set out in the opinion of the Court.

There was a verdict of guilty, and judgment thereupon. The prisoner appealed.

*Attorney General Hargrove*, for the State.
*Howard & Perry* and *Phillips*, for the prisoner.

BYNUM, J. The prisoner is indicted for manslaughter. The testimony of several witnesses was introduced in his behalf, and at the conclusion of the evidence, the Court asked the counsel of the prisoner what they had to say. The counsel replied : " We shall take the ground that it was in self defence." His Honor: "It is manslaughter in any phase, with many elements of murder. I shall tell the jury to return a verdict of manslaughter;" and he so directed, and the verdict was so entered.

Rev. Code, chap. 31, sec. 130, provides that "no Judge, in delivering a charge to the petit jury, shall give an opinion, whether a fact is fully or sufficiently proved, such matter being the true office and province of the jury." This statute is but in affirmance of the Constitution, Art. 1, secs. 13–17, and the well settled principles of the common law, as set forth in *magna charta.* The jury must not only unanimously concur in the verdict, but must be left free to act according to the dictates of their own judgment. The final decision upon the facts rests with them, and any interference by the Court, tending to influence them into a verdict against their convictions, is irregular and without the warrant of law. The Judge is not justified in expressing to the jury his opinion that the defendant is guilty upon the evidence adduced. Experience has demonstrated that few juries are found firm enough to render a verdict in opposition to the declared opinion of the Judge, upon the bench, whose abilities, learning and high position give his opinion the force of a command upon a body timid from inexperience and misdirected by the authority, constituted for their instruction and guidance, both as to their rights and their duties. And seldom would a lawyer argue his case to the jury, when he knew that the Judge had already declared against him and pre-occupied the minds of the jury adversely to his cause. Cooley Const. Lim., 320, and notes ; *State* v. *Harris,* 1 Jones, 190. If, in the case before us, the evidence had made a clear case of guilt against the prisoner, still its credibility was for the jury, and it should have been so submitted to them by the Court, for they must say whether they believe or disbelieve it.

But, assuming that his Honor meant to charge the jury and they understood him to charge, that if they believed the testimony, the prisoner was guilty, and they should so find, did the evidence warrant such an instruction ? Certainly not, if the testimony was fairly susceptible of any

construction. consistent with the prisoner's innocence. How is that? The witness, Sherrod, for the prisoner, testified that on Sunday, the deceased and a large number of other persons were in the store, which was also the dwelling-house of the prisoner; that the prisoner said, " all get out of here, I want to go to the baptizing;" that he repeated the order to get out several times; that the crowd moved slowly. When near the door, the prisoner " shoved " the deceased, who, it appears, was one of the hindmost. The deceased asked, " what he shoved him for?" and the prisoner replied, " I must protect my house;" that when the deceased got out, he pulled off his coat, got a club, admitted to be a deadly weapon, and advanced towards the door, where the prisoner was; that the prisoner told him to go away, presenting a pistol; that the deceased cried out, " shoot, I don't value your pistol;" that the deceased had his stick drawn back and was advancing to the door and was in one or two feet of it, and the prisoner about three feet inside of the door, when the pistol was fired by him.

C. Neal, a witness for the State, presents another version. He does not appear to have seen any " shove," but testified, that when the crowd got out, the deceased pulled off his coat, got the club, and started for the door; that the prisoner asked him, " are you mad?" and the deceased replied; " I am;" prisoner, " you can't help yourself;" deceased, " I will smash every bone in your body;" that the deceased was then advancing to the door; that the witness caught the prisoner by the arm, and being swung around by him, the hat of the witness fell off, and while he stooped to pick it up, the pistol was fired.

Mayo, a witness for the prisoner, does not appear to have seen any " shove," but heard the prisoner tell the crowd seven or eight times to go out; that when out, the deceased pulled off his coat and started for a stick; that Daniel Broadnax broke a leg out of a bench, witness describing it

and pitched it to him, saying, "isn't he a brave boy;" that this made him worse; that Broadnax, himself, took another leg of the bench, and Bob White had a stick, but none of them did anything except the deceased; that prisoner told the deceased if he did not go away, he would shoot him; that the deceased advanced, and the prisoner shot him.

The innocence of the prisoner depends upon whether, from the whole testimony or from that of any witness, he himself at the time of the killing was without fault, and then had a reasonable ground to believe the attempt of the deceased was with the design of taking his life. *State* v. *Harris*, 1 Jones, 190. It is not denied that the advance of the deceased with the drawn club was an assault. Was the assault made with a *felonious intent*, or did the prisoner have reasonable ground to believe it was? The reasonableness of his apprehensions was not a question to be decided by the prisoner or the court, but by the jury, to whom it was not submitted. Assuming that there was evidence from which the jury could infer that the prisoner had reasonable apprehension of the felonious intent, the remaining question is, was the prisoner himself without fault? That depends upon several considerations. Did the prisoner use more force than was necessary to remove the deceased from his house? He had ordered the crowd out as many as seven or eight times, and they "moved slowly." Was this from sullenness and on purpose? If so, the prisoner had the right to use the necessary means of enforcing compliance with his orders. Was the deceased "shoved" at all? The witnesses do not agree as to that. But if he was, what was the character of the shove? Was it in a rude, angry or insulting manner so as to constitute it an assault or battery and put the prisoner in fault? These were questions for the jury, with instructions as to the law, in case they found the facts to have been the one way or the other.

If the evidence thus considered established that the pris-

oner was not in fault, and that the attempt of the deceased was with felonious intent, the authorities establish that it is a case of justifiable self-defence.

The general rule is, "that one may oppose another attempting the perpetration of a felony, if need be, to the taking of the felon's life; as in the case of a person attacked by another, intending to murder him, who thereupon kills his assailant. He is justified. 2 Bish. Cr. Law, sec. 632. A distinction which seems reasonable and is supported by authority, is taken between assaults with felonious intent and assaults without felonious intent. In the latter the person assaulted may not stand his ground and kill his adversary, if there is any way of escape open to him, though he is allowed to repel force by force, and give blow for blow. In this class of cases, where there is no deadly purpose, the doctrine of the books applies, that one cannot justify the killing of the other, though apparently in self-defence, unless he first " retreat to the wall."

In the former class, where the attack is made with murderous intent, the person attacked is under no obligation to fly; he may stand his ground and kill his adversary, if need be. 2 Bish. Cr. L., sec. 6,333, and cases there cited. And so Mr. East states the law to be. "A man may repel force by force, in defence of his person, habitation or property, against one who manifestly intends or endeavors, by *violence or surprise*, to commit a known felony, such as murder, rape, burglary, robbery, and the like, upon either. In these cases he is not obliged to retreat, but may pursue his adversary until he has secured himself from all danger;' and if he kill him in so doing, it is called justifiable self-defence." 1 East P. C., 271. 2 Bish. Cr. L., sec. 633. The American doctrine is to the same effect. " If the person assaulted, being himself faultless, reasonably apprehends death or great bodily harm to himself, unless he kill the assailant, the killing is justifiable." 2 Bish. Cr. L., sec. 644,

and cases referred to in the notes; *State* v. *Roane,* 2 Dev., 58; *State* v. *Scott,* 4 Ired., 409. The attempt to commit a felony upon the person may be resisted to the death, without flying or avoiding the combat. *Ibid,* sec. 652. There was some evidence tending to show justifiable self-defence on the part of the prisoner, and it should have been submitted to the consideration of the jury, with instructions as to the legal effect of their finding upon it.

The prisoner offered to prove, as part of the *res-gestæ,* that immediately after firing the pistol, he exclaimed to the witness, " now help me," and also that the " crowd " at the same time " made a rush at the door."

We have before seen that if the attack upon the prisoner was felonious, and he blameless of provoking it, he had the right to stand his ground and slay his antagonist. In that point of view the excluded testimony becomes wholly immaterial, and need not be considered. If, however, the attack was made without a felonious intent, or if the prisoner engaged in the fight willingly, he is not excused, unless he was sorely pressed—put to the wall—so that he must be killed or suffer great bodily harm, unless he kill his adversary, and under such circumstances did kill. In this point of view the excluded testimony, if admissible as part of the *res-gestæ,* might become material as tending to show that the prisoner was or was not driven to the wall, as the jury might consider it. As it was not denied in the argument that the assault of the deceased, upon the prisoner, with the club was felonious, and as a new trial must be granted, because of the error in his Honor's direction to the jury, it is unnecessary now to decide these questions of evidence, and they may not arise on the next trial. We express no opinion upon them.

The whole matter may be thus summed up. Did the prisoner and the deceased, upon a sudden quarrel, engage in the combat willingly, the one armed with a pistol and

the other with a deadly club? If so, it is a case of man-slaughter. Or did the deceased make a felonious assault upon the prisoner, who was in no default at the time? If so, it is a case of justifiable self-defence. *State* v. *Floyd*, 6 Jones, 392; *State* v. *Roane*, 2 Dev., 58; *State* v. *Massage*, 65 N. C., 480; *State* v. *Yancey*, 74 N. C., 244.

There is error.

PER CURIAM.                                          *Venire de novo.*