## STATE v. WILLIAM H. VANN.

*Homicide—Jury—Confessions—Declarations—Insanity, plea of.*

1. Where the incompetency of a juror was not ascertained until after he had been passed and accepted by the prisoner, the court may *then* allow a challenge by the state.

2. Whether a prisoner's confessions are voluntary or induced by hope or fear, is a question of fact to be decided by the judge, and his finding is conclusive. What constitutes such hope or fear is a matter of law which is reviewable upon exception taken below.

3. Declarations of a prisoner made after the commission of the alleged crime are not admissible in evidence for him, not even in support of insanity as a defence, unless they form a part of the *res gestæ* to some act which is admitted in evidence.

4. A voluntary killing of a human being by another is taken by the law to be on malice implied, and nothing more appearing, is murder. No extenuation or acquittal from that sentence of the law can be had, except upon matter coming from the prisoner, or by legal inferences from the surrounding circumstances, and shown to the satisfaction of the jury.

5. So that, if the prisoner shall prove, or it be admitted, that he was insane before the homicide, still his insanity at the time of the homicide is yet an open question of fact which must likewise be established to the satisfaction of the jury ; and if not, then upon the malice implied, the prisoner is guilty of murder.

(*State* v. *Davis,* 63 N. C., 578 ; *Willis Id.,* 26 ; *Andrew,* Phil., 205 ; *Scott,* 1 Hawks, 24 ; *Huntley,* 3 Ired., 418 : *Tilly, Id.,* 424, cited and approved.)

INDICTMENT for Murder tried at Fall Term, 1879, of HERT-FORD Superior Court, before *Gudger, J.*

Verdict of guilty, judgment, appeal by prisoner.

*Attorney General* and *R. B. Peebles,* for the State.
*Messrs. Pruden & Shaw,* for prisoner.

DILLARD, J.   The prisoner was indicted for the murder of James H. Gatling, and tried and convicted in the superior

court of Hertford, and on the trial he made several excep-
tions, which we will consider in their proper order.

1. When the jury were being formed, a juror was called
and passed by the state without objection, and on being
challenged by the prisoner, he said he had not formed and
expressed an opinion as to the prisoner's guilt, but that he
believed him insane at the time the homicide was commit-
ted, and that belief was so firmly fixed that no evidence
could remove it. Thereupon the state was allowed to chal-
lenge the juror for cause, and the cause was held good. This
point has been ruled during this term of the court in con-
formity with previous rulings, and this exception is unten-
able. *State* v. *Vestal, ante,* 563.

2. The second exception is as to the admission of certain
confessions made by the prisoner to one Pittman at the house
of deceased, while in his custody and pending investigation
of the case before the coroner's jury : It was shown that
many persons were at the house, and some excitement
among them, some saying that prisoner ought not to have
anything to eat, and others that he ought to be hanged, but
none of these expressions, nor the answer of the officer that
the prisoner should have something to eat if he had to carry
him home to get it, were made in the prisoner's hearing.
It was also shown that a number of persons assembled
around the prisoner when he was first brought to the house
of the deceased, but were separated from him by the officer.
That the conversation occurred the next morning at nine
or ten o'clock, and after prisoner had remained all night at
the house, and while the coroner's jury were sitting on the
case, but was not in their hearing. It was proved by the
officer that prisoner's hopes and fears were not operated upon.
Whether the confessions were voluntary or induced by hope
or fear was a preliminary question of fact to the judge be-
low, and he found the fact that there was no hope or fear
operating on the prisoner, and his finding is conclusive and

cannot be reviewed by us as to that, and there being no exception to His Honor's opinion as to what constituted such fear or hope as would exclude the confession, there is no matter of law which we can review, and therefore we must hold that there was no error in admitting the confessions made to Pittman. *State* v. *Davis*, 63 N. C., 578; *State* v. *Andrew*, Phil., 205.

3. The officer having the prisoner in charge, who was tied at the time, said to the prisoner in the presence of the coroner's jury, "You have to die as well as Henry Gatling, and ought not to die with a lie on your lips." The prisoner made no reply, and was very soon thereafter on the same day committed to the jail; and nineteen days after that time, one Jones passing the jail said to prisoner, "I suppose you are in here for a bad crime." The prisoner answered "yes." The witness then said, "why did you kill Henry Gatling," and to this the prisoner replied, "because I was mad with him." This confession was received precisely as was the preceding one to Pittman, and for the reason given in relation to that evidence, the admission of prisoner's conversation with Jones was proper.

The prisoner proposed to show by one of the state's witnesses other declarations made by him while in jail in explanation of his statement to Jones, and as tending to show his insanity, to-wit: "I was in great distress. I believed that Gatling was the cause of it, and by killing him I would be relieved." These declarations formed no part of any act admitted in evidence. They were made at a time different from the statement to Jones and had no connection with the conversation had with him, nor with the one had with Pittman, and we understand the rule to be that a party charged with a crime can never put in evidence in his own behalf any declarations of his after its commission, not even in support of insanity as a defence, unless as a part of the *res gestæ* to some act which is admitted in evidence.

In the case of *State* v. *Scott*, 1 Hawks, 24, upon a charge of murder the prisoner set up the defence of insanity, and to prove the truth thereof proposed evidence of his declarations in connection with his conduct on the next morning, and Judge HENDERSON, delivering the opinion of the court, uses this language: " I must submit to the law as I find it written. The declarations of a party cannot be offered in evidence unless they accompany acts. They then become part of the acts and as such may be heard." See also *State* v. *Huntley*, 3 Ired., 418, and *State* v. *Tilly*, *Id.*, 424. For these reasons we hold there was no error in rejecting evidence of the proposed declarations of the prisoner.

It was conceded by the state on the trial that the prisoner was violently insane shortly before the homicide and was then of unsound mind, but it was insisted that at the time of the commission of the offence the prisoner had a lucid interval and was criminally responsible for his acts. The evidence of the mental condition of the prisoner at the time of the killing is not stated, but as to its effect, the following special instruction was prayed by the prisoner : " If the insanity of the prisoner shortly before the homicide be admitted or found by the jury, then before the jury can convict, the state must prove beyond a reasonable doubt that at the time of the homicide the prisoner had a lucid interval and was in such a mental condition as to make him responsible for his acts." The court refused so to charge, but told the jury if the insanity of the prisoner shortly before the commission of the homicide be found by the jury or admitted by the state, then it is the duty of the state to show, not beyond a reasonable doubt, nor by a preponderance of evidence, but to the satisfaction of the jury, that at the time of the homicide the prisoner had such a lucid interval, and was in such a mental condition as to make him responsible for his acts.

The correctness of the charge of the court and the refusal

of the instructions asked for by the prisoner, constitute the principle exceptions on the argument before us.

In an indictment for murder, the two constituents of the crime, to-wit, a voluntary killing and malice aforethought, must be proved by the state, as it makes the charge; and as the accused is presumed to be innocent until the contrary is shown, both of these elements must be proved. The killing being shown, then the other ingredient, malice prepense, is also proved as a fact in the eyes of the law, not by evidence adduced, but by a presumption that the law makes from the fact of the killing. And these two essential facts being thus established, the legal conclusion thereon is, that the offence charged is murder. Foster's Crown Law, 255; East P. C., 224; *State* v. *Willis,* 63 N. C., 26.

But the implication of malice, made by the law and taken as a fact, is not conclusive on the party accused, but may be rebutted. He may show, if he can, by his proofs, that there was no malice prepense and thereby extenuate to manslaughter, or make a case of justifiable or excusable homicide, or a case of no criminality at all by proof of insanity at the time of the act committed, disabling him to know right from wrong. See Foster and other authorities *supra.* The burden lies on the accused to make these proofs, if he can; otherwise, the conclusion of murder, on a malice implied, will continue against him and will call for, and in law, oblige a conviction by the jury. And in the making of such extenuating or acquitting proofs, the law puts on him the *onus* to do so, not excluding all reasonable doubts, but merely to the extent of satisfying the jury. There are respectable authorities which hold that mental competency of the accused is one of the constituent elements of the crime imputed, and that when that is controverted, it must be shown beyond a reasonable doubt in the minds of the jury. But such is not the law of this state. The doctrine with us is well established, that when there is a voluntary killing, as is admitted in this

case, the law presumes malice and makes the crime murder, unless as above explained, the accused can and does repel the same by evidence of his own or by legal inferences from the surrounding and attending circumstances. By our decisions, matters of extenuation and excuse, or discharge by reason of insanity, must be shown by him who sets it up; otherwise, the implied malice continues and the case remains in judgment of law a case of murder. *State* v. *Willis*, *supra*. This case (*Willis'*) was carefully considered and in view of our own decisions and the Crown Law of England, and after commenting on the *Com.* v. *York*, 9 Metc., 93, and the dissenting opinion therein of WILDE, J., a conclusion is reached, in harmony with previous rulings in this court, that matters of mitigation, excuse or justification must always come from him who claims the benefit thereof, and must be proved not beyond a reasonable doubt, but only to the satisfaction of a jury; and to this case we assent as controlling the case under consideration.

Applying the principle above enunciated and established by *Willis'* case, the prisoner, by the voluntary killing of Gatling, admitted by himself, and the consequent implied malice, went to trial with the legal conclusion of murder against him; and to have acquitted himself, it would have been incumbent on him to have proved an habitual or permanent insanity before the homicide. And if the fact of its existence originally, or its presumed continuance at the time of the killing, was controverted by the evidence of the state, he would have had to show, and that by evidence satisfactory to the jury, at least the fact of a continuance of insanity at the time he slew the deceased; or failing so to do the legal conclusion from malice implied would have still remained and his offence would still have been murder.

Now on the trial the state dispensed with proof by the prisoner of an insanity at a day anterior to the homicide by admitting that much for him, and thereby the issue was re-

duced to the single fact of the existence or non-existence of prisoner's insanity at the time of the killing. Upon that point, evidence was introduced by the state tending to show the non-existence of insanity, and the prisoner did or might have introduced testimony in aid of the presumption already in his favor from the admission of insanity before the homicide, in order to satisfy the jury of the existence of his insanity at the time of the killing, and the prisoner failing to satisfy the jury of the truth of his defence, there remained then the fact of the voluntary act of killing and with malice implied, and this in point of law made the crime murder. *State* v. *Willis, supra*; *Coruth* v. *Eddy*, 7 Gray, 583.

After a careful investigation of the several exceptions taken by the prisoner, we are unable to discern any error of law on the trial, and we must so declare, and this will be certified to the end that the sentence of the law may be executed.

