## STATE v. WILLIAM GENTRY.

### (Decided December 23, 1899.)

*Murder—Second Degree—Self-Defense—"Retreating to the Wall."*

1. There may be cases, though rare and of dangerous application, where a man in personal conflict may kill his assailant without retreating to the wall.

2. This doctrine, that a man can kill his assailant, though he could with safety retreat, was properly applied in *Dixon's* case (75 N. C., 275), where the man assaulted was in his own dwelling and was murderously assaulted by one he had ordered out.

3. Ordinarily, it is enough to say, if the prisoner could not with safety retreat, he was justifiable in taking human life.

4. Upon appeal from a conviction for a lesser offense than that charged in the bill, a new trial if granted must be upon the full charge in the bill.

INDICTMENT, murder, tried before *Stevens, J.,* of the Western Distrite Criminal Court at May Special Term, 1899, of MADISON County..

The prisoner was indicted for the murder of Williard Franklin, and was convicted of murder in the second degree, and from the judgment rendered, appealed to the Superior Court. The appeal came on to be heard at July Term, 1899, of the Superior Court, before *Coble, J.,* who affirmed the judgment, and the prisoner appealed to the Supreme Court. The circumstances attending the homicide, the exceptions to his Honor, Judge Stevens' charge, and to his refusal to charge as requested, are stated in the opinion.

CLARK, J., writes the opinion.
MONTGOMERY, J., writes dissenting opinion.

*Mr. J. M. Gudger, Jr.,* for appellant.
*Attorney-General,* for State.

CLARK, J.    The prisoner, convicted in the Criminal Court for Madison County of murder in the second degree, appealed to the Superior Court, in which his assignment of error being overruled, he appeals to this Court.  The only exceptions relied on, are that the Court did not charge as requested, "that if the jury shall find from the evidence that the deceased assaulted the prisoner with a knife and being himself without fault had reason to apprehend that he was about to suffer death or great bodily harm unless he killed the deceased, then he could stand his ground and kill the deceased, and the killing would be justifiable," and that the Court charged in lieu thereof:    "Now if you are satisfied from the evidence that the prisoner previously had fights and quarrels with the deceased, but a reconciliation took place, and that they made friends about the card game, that the prisoner and the deceased entered into an engagement to go to Sodom, that the prisoner borrowed or hired a pistol for the purpose of taking it to Sodom, and not for the purpose of arming himself to kill the deceased, that the prisoner followed the deceased from Bud Gentry's house to the place of the homicide in pursuance of the engagement to go to Sodom, and that on approaching and overtaking the deceased, the deceased asked the prisoner, "damn you, where are you going?" and the prisoner replied, "I don't like to be intruded upon or imposed upon;" and if you shall be further satisfied from the evidence that thereupon the deceased wheeled right around and said, "Damn you, I will kill you," and commenced coming towards the prisoner and raised his right hand with an opened knife, with a blade three or four inches long, and advanced within a step or two of the prisoner and the prisoner fired; and if you shall be further satisfied that at the time the prisoner shot the deceased he shot under the reasonable apprehension that he was about to lose his life or suffer great or enormous bodily

harm, and used no more force than a man of ordinary prudence would have used under similar circumstances, and that the fierceness and suddenness of the attack were such that he could not retreat with safety, he would not be guilty, and it would be your duty to render a verdict of not guilty."

The prayer asked was properly refused, and it is expressly so held in *State v. Matthews,* 78 N. C., at p. 534. It would not have been proper to have charged as asked if the prisoner "had reason to apprehend" he could stand, etc., but he must also actually have apprehended, or as the Judge put it in his charge, given in lieu of this prayer, if the prisoner "shot under the reasonable apprehension," etc., then he would not be guilty.

The prisoner's counsel insists that it was error to tell the jury that, "if the fierceness and suddenness of the attack were such that he could not retreat with safety, the prisoner would not be guilty," if he slew the aggressor. There is nothing in this that the prisoner can except to. It is true, "there may be cases, though they are rare and of dangerous application, where a man in personal conflict may kill his assailant without retreating to the wall" (*State v. Kennedy,* 91 N. C., at p. 578), but the Court was not asked to charge that this was such a case, and did not charge anything to the contrary. The charge must be construed by the context. The Judge was charging the prisoner's view of the occurrence. His recital of facts was of those given in by the prisoner on the stand, an improbable account of the transaction on its face, and contradicted by the overwhelming weight of the evidence, but the Judge told the jury that if they believed that was the state of facts, and the prisoner could not with safety retreat (which was the synonym of the statement, "if the deceased was advancing on him with raised blade three or four inches long and within a step or two of him"), then the prisoner was

justifiable in killing, and should be found not guilty. The jury evidently did not believe that state of facts.

This case differs from *State v. Dixon,* 75 N. C., 275, relied on by prisoner's counsel, in that there the prisoner was in his own dwelling, and had ordered the deceased out, but he returned and murderously assaulted the prisoner, advancing on him with a deadly weapon, when the prisoner shot and killed. The Judge instructed the jury to render a verdict of manslaughter. This Court, in reversing the Judge, went on to say, though it was not necessary to the decision, that under such circumstances it was not incumbent upon prisoner to flee. He was in fact already at the wall. He was in his own dwelling. Some general expressions are used, but they must justly be construed with reference to the facts of that case or one very similar. Here, they are totally different. By the prisoner's own evidence there had been fights between him and the deceased, one very recently; he overtook the deceased in the road and, when accosted rudely by him, replied so rudely that the deceased attacked him with a knife. It was upon these circumstances that the Judge told the jury, "If the fierceness and suddenness of the attack were such that the prisoner could not retreat with safety, he would not be guilty." As said in *State v. Kennedy, supra,* a much later case than *State v. Dixon,* the doctrine that a man can kill his assailant, though he could with safety retreat, is of "rare and dangerous application." It was applied properly in Dixon's case where the man assaulted was in his own dwelling, and was murderously assaulted by one he had ordered out. It does not apply to the facts and circumstances of this case, where the prisoner in the public road overtakes a man with whom he had recently had a fight, and the assault of the deceased follows a rude reply of the prisoner. In such case it is enough to say, "if the prisoner could not with safety

retreat, he was justifiable in taking human life." *State v. Dixon* is also noticed in *State v. Vines,* 93 N. C., 493, which says, that it went off upon the ground that the Judge *directed* a verdict. The proposition that a man can slay notwithstanding he could retreat with safety has thus been restricted by the two cases cited, and certainly ought not to be extended beyond the circumstances of *State v. Dixon* or those very similar, and has not been so extended in any case in this Court. In fact it has not been since applied in any case. "Of rare and dangerous application," the doctrine certainly has no application to a fight in the public road, where the jury, in response to a charge, has found that the "suddenness and fierceness of the assault *were not* such that the prisoner could not with safety retreat," for if they were, then under the charge a verdict of not guilty would have been returned.

The weight of evidence, if believed, pointed to murder in the first degree, and it is doubtful at best if a new trial could have benefitted the prisoner. He certainly has no just ground to hope for a more lenient verdict, and under all our authorities, if the case had gone back for a new trial it must have been for the offense charged in the bill. It is upon that charge that an appeal asks that the prisoner have a trial *de novo. State v. Stanton,* 23 N. C., 424, and other cases cited in *State v. Freeman,* 122 N. C., 1012.

The judgment below is affirmed. This will be certified to the Superior Court for Madison County.

No error.

MONTGOMERY, J., dissenting. His Honor instructed the jury (among other things, not excepted to) : "If you are satisfied from the evidence that prisoner previously had fights and quarrels with deceased, but a reconciliation took place, and they made friends about the card game, that prisoner and

deceased entered into an engagement to go to London; that prisoner borrowed or hired a pistol for the purpose of arming himself to kill deceased; that prisoner followed deceased from Bud Gentry's house to the place of the homicide in pursuance of the engagement to go to London, and that on approaching and overtaking deceased, the deceased asked prisoner, 'Damn you, where are you going,' and the prisoner replied, 'You told me you wanted me to go to London to-night,' and deceased replied, 'You are a damn lie—I never said it,' and prisoner replied, 'I don't like to be intruded upon, or imposed upon;' and if you should further be satisfied from the evidence that thereupon the deceased wheeled right around and said, 'Damn you, I will kill you,' and commenced coming toward prisoner and raised his right hand with an open knife with a blade three or four inches long, and advanced within a step or two of prisoner, and prisoner fired; and if you should be further satisfied that at the time prisoner shot deceased he shot under a reasonable apprehension that he was about to lose his life or suffer some great or enormous bodily harm, and used no more force than a man of ordinary prudence wuld have used under similar circumstances, and that the fierceness and suddenness of the attack was such that he could not retreat with safety, he would not be guilty," etc., etc.

The prisoner introduced evidence tending to prove all the facts which were recited in that part of his Honor's charge above quoted. Exception was made by the prisoner's counsel to the closing words of the charge, "*and that the fierceness and suddenness of the attack was such that he could not retreat with safety.*"

The only questions then in the case, as I see it, is, whether (if the jury should have found the facts as testified to by the prisoner's witnesses to be true) it was necessary, in order to the prisoner's justification, that he should have attempted a

retreat from his assailant. I think that in law he was not compelled to do so. In the works of several of the writers upon the English common law, in English adjudicated cases, and in the decisions of our own Court, we have a clear distinction marked out as to the rule which governs the conduct of one who slays his assailant, where the assault is felonious and murderous, and the rule which governs where the assault is not made with felonious and murderous intent; and the distinction, as I read it, is where the assault is not with a felonious or murderous intent the one assaulted must avoid taking the life of his assailant if a way of retreat be open to him; he can not stand his ground and kill his adversary without an attempt to avoid it, though he may give blow for blow in his own defense. But in cases where the assault is felonious and murderous, the assaulted person is not bound to run away. If he is without fault himself, he can stand his ground and kill his adversary. He is not even bound to wait and give his adversary an even showing with him, for, if he is without fault himself, and his adversary is bent on taking his life or doing him some enormous bodily harm with a deadly weapon, and within a distance in which the weapon can be used, the assailed person need not run the risk of losing his life or suffering great bodily harm at the hands of the would-be murderer.

In Foster's Crown Law, p. 273, it isw ritten   *   *   *
"the writers on The Crown Law, who I think have not treated the subject of self-defense with due precision, do not, in terms, make the distinction I am aiming at, yet all agree that there are cases in which a man may, without retreating, oppose force by force even to the death. This, I call justifiable self-defense, they justifiable homicide. In the case of justifiable self-defense, the injured party may repel force with force in defense of his person, habitation or property

against one who manifestly intendeth and endeavoreth with violence or surprise to commit a known felony on either. In these cases he is not obliged to retreat, but may pursue his adversary till he findeth himself out of danger, and if in a conflict between them he happeneth to kill, such killing is justifiable. The right of self-defense in these cases is founded on the law of nature, and is not, nor can be, suspended by any law of society."

In *State v. Dixon*, 75 N. C., 275, the same doctrine is followed. I can do no better than to quote from that opinion: "If the evidence thus considered established that the prisoner was not in fault, and that the attempt of the deceased was with felonious intent, the authorities establish that it is a case of justifiable self-defense." The general rule is: "That one may oppose another attempting a perpetration of a felony, if need be, to the taking of the felon's life, as in the case of a person attacked by another intending to murder him, who thereupon kills his assailant. He is justified." 2 Bishop Cr. Law, sec. 632. A distinction which seems reasonable, and is supported by authority, is taken between assaults with felonious intent and assaults without felonious intent. In the latter class, the person assaulted may not stand his ground and kill his adversary if there is any way of escape open to him, though he is allowed to repel force by force; in the former, where the attack is made with murderous intent, the person attacked is under no obligation to flee; he may stand his ground and kill his adversary if need be." 2 Bishop, *supra,* 633, and cases there cited. And so Mr. East states the law to be: "A man may repel force by force in defense of his person, habitation or property against one who manifestly intends or endeavors, by violence or surprise, to commit a known felony, such as murder, rape, burglary, robbery and the like, upon either. In these cases he is not obliged

to retreat, but may pursue his adversary until he has secured himself from all danger; and if he kill him in so doing, it is called justifiable self-defense." 1 East P. C., 271; 2 Bishop, *supra,* sec. 633. The American doctrine is to the same effect: "If the person assaulted, being himself faultless, reasonably apprehends death or great bodily harm to himself unless he kill the assailant, the killing · is justifiable." 2 Bishop, *supra,* sec. 644. "The attempt to commit a felony upon the person may be resisted to the death without flying or avoiding combat." *Ibid,* sec. 652. The very same principle was affirmed in *State v. Matthews,* 78 N. C., 534, where it is said by the Court: "It is said in all the authorities, and can not be doubted, that if a man who is assailed believes and has reason to believe that although his assailant may not intend to take his life, yet he does intend and is about to do him some enormous bodily harm, such as maim, for example, and under this reasonable belief he kills his assailant, it is homicide *se defendendo,* and excusable. It will suffice if the assault is felonious. Foster, 274." In the opinion of the Court in this case, the case of *State v. Dixon, supra,* is undertaken to be distinguished from the case at bar. It is true that the homicide in Dixon's case occurred in the store of the prisoner, and that his residence was attached to the store-house, but that fact had no bearing upon the decision in that case; it only came out as a matter of proof as to where the homicide occurred. No where in the opinion was the principle of law announced by the Court intended to be applied peculiarly because the homicide occurred on the premises of the prisoner. The principle of law laid down in *State v. Dixon, supra,* was a general principle, intended to apply wherever a homicide might occur, whether at the slayer's house or on the highway or anywhere else.

In the opinion of the Court in this case, the real exception

taken by the prisoner to the charge of his Honor has been misconceived, in my judgment, and a most important part of the evidence as given by the prisoner as to what occurred just at the time of the homicide has been overlooked. In the opinion of the Court, it is said: "The weight of evidence, if believed, pointed to murder in the first degree, and it is doubtful, at best, if a new trial would have benefitted the prisoner. He certainly had no just ground to hope for a more lenient verdict, and under all our authorities if the case had gone back for a new trial it must have been for the offense charged in the bill." I heartily concur in that view of the Court that the weight of evidence was to the effect that the prisoner maliciously, deliberately and premeditatedly murdered the deceased. But this is not the point in the case. His case was prejudiced, according to my view, by an erroneous instruction as to the law, and that ought not to have been. Further, I am afraid that the departure in this case from the rule laid down in *State v. Dixon* and *State v. Matthews, supra,* will result in the conviction of some better man than the prisoner in this case, who, in the defense of his own person without fault, may himself slay an assailant who is attempting to murder him from motives of malice and premeditation.