STATE v. CLARK.

(Filed April 5, 1904).

1. HOMICIDE—*Self-defense.*

The facts and circumstances, in a prosecution for murder, in mitigation or excuse, need be shown only to the satisfaction of the jury.

2. HOMICIDE—*Self-defense.*

In a prosecution for murder an instruction that requires the prisoner to prove beyond a doubt that the deceased was actually making a felonious assault and that the prisoner at the time had reasonable ground to believe that the deceased was making such an assault, was erroneous.

3. INSTRUCTIONS—*Trial—The Code, sec. 413.*

Under The Code, sec 413, requiring the court to state in plain and correct manner the evidence and declare and explain the law arising thereon, the duty of the court to explain technical words used in instructions cannot be omitted because some of the jury may be able to explain them.

STATE *v.* CLARK.

4. HOMICIDE—*Self-defense.*

Where an instruction states that, in order to justify the use of a deadly weapon in self-defense, it must appear that the danger was so urgent and pressing that to save his own life or to prevent his receiving great bodily harm the. shooting by defendant was absolutely necessary, the error as to the existence of the absolute necessity to kill was not cured by a subsequent instruction explaining what kind of reasonable apprehension that he was about to be killed or to receive great bodily harm would have justified defendant in acting on the facts and circumstances as they appeared to him.

5. HOMICIDE—*Self-defense.*

Where deceased was attempting to kill another or to do him great bodily harm, or defendant had a well-grounded belief or apprehension that he was attempting to do so, he had the right to interfere to prevent deceased from executing his intention, and if, while engaged in the interference for such lawful purpose, deceased advanced on him in such manner as to induce defendant to reasonably apprehend, and defendant did actually apprehend, that he was about to be killed or receive great bodily harm, he was justified in killing deceased to save his own life or to prevent great bodily harm to himself.

CLARK, C. J., dissenting.

INDICTMENT against G. Clark, heard by *Judge B. F. Long* and a jury, at Spring Term, 1903, of the Superior Court of ASHE County. From a verdict of guilty of murder in the first degree, and judgment, the prisoner appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*R. A. Doughton, R. Z. Linney* and *Geo. L. Park,* for the prisoner.

WALKER, J. The defendant was indicted for the murder of Chares Stanberry. The evidence tended to show that Stanberry and Asa Miller, both being under the influence of liquor, were cursing each other in the public road when

Stanberry grabbed Miller and threw him to the ground and held him down while he brandished his knife over him and with an oath threatened to cut his throat or to cut his head off. Miller begged Stanberry not to cut him. The defendant interfered for the purpose of preventing Stanberry from cutting Miller, and as he did so Stanberry cursed him and asked him what he had to do' with it, at the same time advancing on him with a knife drawn and in a threatening attitude. The defendant retreated, and when he was near the fence on the side of the road and not more than four feet from Stanberry, the latter "grabbed at the defendant with his left hand and tried to strike him with his right," and the defendant thereupon fired at him with his pistol and inflicted a wound from which Stanberry died about a month afterwards. Before the defendant fired the pistol, he warned the deceased not to advance on him, with the knife. While it appeared that deceased was drunk, there was evidence tending to show that "he had good use of himself." A constable who was present told the bystanders not to let the deceased hurt Miller. Without reciting any more of the testimony, it is sufficient to say that it tended to show that the deceased was in the act of cutting Miller, with the present ability to do so, when the defendant interfered to prevent it.

At the request of the State the Court gave the following instructions: "2. If the jury are satisfied, beyond a reasonable doubt, that the defendant slew the deceased with a deadly weapon, to-wit, a pistol, and are left in doubt as to the circumstances of mitigation or excuse offered by the defendant or derived from the State's evidence, they should convict of murder in the second degree."

"3. If the jury are satisfied, beyond a reasonable doubt, that the defendant slew the deceased with a deadly weapon, to-wit, a pistol, and are left in doubt from the whole evi-

dence as to whether the deceased at the time he was slain was making a felonious assault upon the defendant with a knife, either because he did not then have the knife or because he was too drunk to be capable of making such assault, and are left in doubt as to whether the defendant at the time he slew the deceased believed, and had reasonable ground for believing, that the deceased was making such felonious assault upon him with a knife, then they should convict of murder in the second degree." Defendant excepted to each of said instructions.

The defendant's counsel requested the Court to give the following instruction: "If the jury believe from the evidence that the deceased was engaged in a difficulty with Asa Miller and was attempting to cut said Miller with a knife in the presence of the defendant, it was his duty to endeavor to suppress and prevent the same, and if in attempting to do so the deceased left off his difficulty with Miller and made upon the defendant with a drawn knife in such a manner as to cause the defendant to apprehend, and he did apprehend, that he was about to be slain, or to receive enormous bodily harm, then the defendant had a right to stand his ground and, if necessary, to take the life of the deceased without retreating."

The Court refused to give the instruction as asked, but in response thereto charged the jury as follows: "If the jury believe from the evidence that the deceased was engaged in a difficulty with Asa Miller and was attempting to cut said Miller with his knife, in the presence of the defendant, [and the deceased was then capable of executing such a purpose], it was his duty to endeavor to suppress and prevent the same, and if in attempting to do so the deceased left off his difficulty with Miller and made upon the defendant with a drawn knife in such manner as to cause the defendant to [reasonably] apprehend, and he did [actually] apprehend,

that he was about to be slain, or to receive enormous bodily harm, then the defendant had a right to stand his ground and, if necessary, to take the life of the deceased without retreating [provided the assault made upon the defendant was felonious or with felonious intent]. Defendant excepted.

The parts of the instruction in brackets indicate the modifications of the defendant's prayer made by the Court.

We are of opinion that the Court erred in the instructions given in response to the State's second and third prayers. Those instructions required the defendant to establish the facts and circumstances in mitigation or excuse, not merely to the satisfaction of the jury, but to the exclusion of any doubt. We have recently said in *State v. Barrett,* 132 N. C., 1005, that the defendant is required to *satisfy* the jury of the existence of the mitigating circumstances in order to reduce the offense from murder to manslaughter, or of the matters in excuse in order to sustain his plea of self-defense, not beyond a reasonable doubt nor even by a preponderance of evidence. It is well said in *State v. Brittain,* 89 N. C., 502, that "The principle of reasonable doubt has no application to the doctrine of mitigation. The rule in regard to that is that the jury must be satisfied by the testimony that the matter offered in mitigation is true," citing *State v. Ellick,* 60 N. C., 450, 86 Am. Dec., 442; *State v. Willis,* 63 N. C., 26, and *State v. Vann,* 82 N. C., 632. In *Asbury v. Railroad Co.,* 125 N. C., 568, the Court held that a charge substantially like the one given in this case imposed upon the party having the burden the duty of making out his case beyond any doubt.

We have seen that the doctrine of reasonable doubt does not apply to the case of a defendant indicted for murder, when he is attempting to establish the mitigating circumstances necessary to reduce the grade of the homicide, and if he is

not required to prove them beyond a reasonable doubt, how can it be said that he must remove every doubt from the minds of the jury? This would include not only a reasonable doubt but any kind of doubt, and therefore the burden upon him would be much lighter if the simple doctrine of reasonable doubt alone applied. This Court has repeatedly said that the law does not require such strict proof from the defendant, but it is sufficient to reduce the homicide from murder to manslaughter, or to make out a plea of self-defense, or other affirmative defense, if the jury are merely satisfied of the existence of the facts necessary for that purpose.

We are aware that expressions like that used by the learned Judge in this case may occasionally be found in our Reports, and they may seem to have received the tacit approval of this Court. But when the cases are examined, and they are very few, it will be seen that they are mere *dicta* or were inadvertently used, and we have not been able to find a single case in which the question has been presented and it has been decided that any doubt in the minds of the jury as to the matters in mitigation or excuse is sufficient to turn the scales against the defendant and to convict him of murder or manslaughter, as the case may be, when the killing with a deadly weapon is admitted or proved. We would hesitate to follow a decision to that effect, because, as we think, it would be contrary to many cases where the question has been directly involved, and in which the principle which we have already stated has been laid down as a reasonable and just one. It imposes a greater burden than the defendant should be required to carry. Surely it cannot be that the State is required to exclude only a reasonable doubt in order to convict, and the defendant must exclude every doubt in order to reduce the grade of the homicide or to acquit himself of so serious a charge.

But the Court also told the jury, in response to the State's third prayer for instructions, that they must convict the defendant of murder in the second degree if they were left in doubt as to whether the deceased, at the time he was slain, was making a felonious assault upon him, and as to whether the defendant at the time he slew the deceased believed, or had reasonable ground for believing, that the deceased was making a felonious assault upon him. This charge required the defendant to prove not only that the deceased was actually making a felonious assault, but also that the defendant at the time had reasonable grounds to believe, and did believe, that he was making such an assault. Whether a felonious assault was being made or not, if the defendant, from the circumstances and surroundings as they then appeared to him, reasonably apprehended that the deceased was assailing him with the intent to kill him or to do him great bodily harm, he had the right, if he was not himself already in fault, to stand his ground and defend himself and, if necessary, to take the life of his assailant, and this would be true though it afterwards appeared that the deceased did not in fact intend to commit a felonious assault. *State v. Matthews,* 78 N. C., 523; *State v. Barrett, supra* and cases cited.

The defendant is to be judged, not by what the deceased actually intended, but by the reasonable apprehension excited in his own mind by the acts of the deceased as to what the latter intended to do, provided the defendant acted in good faith and with ordinary firmness. But while he could thus act upon appearances, he must have judged, at his peril, of the grounds of his apprehension to this extent: that on his trial for the homicide, while the jury are bound by the law to pass upon the defendant's act according to the facts and circumstances as they appeared to him at the time he committed the homicide, they must be the sole judges of

the reasonableness of the grounds of his apprehension. We stated this principle fully in Barrett's case, and sustained it by the citation of authority, not only from the decided cases, but from the great writers upon the criminal law, and, without reproducing it, we are now content to refer to what we then said as applicable to the particular instruction of the Court in this case. *State v. Dixon,* 75 N. C., 275.

It is said, though, to be a complete answer to those exceptions, that the defendant was convicted of murder in the second degree and could not therefore have been prejudiced by them. This is very far from being the case. The Court plainly referred in both of the instructions not only to "matters in mitigation" but to "matters in excuse," and told the jury that if they were in doubt as to either they should convict of murder in the second degree, that is, if they were in doubt as to the matters in excuse which tended to acquit the defendant, they should convict him of murder in the second degree. It would be difficult to conceive of a charge more prejudicial than this one. If the jury entertained any sort of doubt as to the matters in excuse they could not, under this instruction, acquit the defendant, for they were directed not to do so. If they entertained no doubt, it was as much their duty to acquit as it was, in the other case put, to convict, and yet they convicted of manslaughter instead of acquitting. It is true that if there has been error the defendant must show that he has been prejudiced before he is entitled to a new trial, but when the Court tells the jury that they cannot acquit if the defendant has not removed every doubt as to the matters in excuse, the prejudice to the prisoner is perfectly manifest. One of the fallacies in supposing otherwise arises from not giving heed to the fact that both instructions referred not only to matters in mitigation but to matters in excuse, and therefore to instruct the jury that if they had any doubt as to the

134——45

matters in excuse they should convict of murder in the second degree, was the same as telling them that in such a case they could not acquit.   It is very true that when the killing with a deadly weapon is either admitted or proved, and nothing else appears, the presumption is that the defendant is guilty of murder in the second degree, and every matter of excuse or mitigation must be shown by the defendant, but only to the satisfaction of the jury, and there the rule stops, and it is unsafe to substitute any new, untried and unnecessary formula for this simple principle which has been approved in all cases and especially commended by this Court as the only safe and correct one.   We said in *State v. Barrett,* 132 N. C., 1012, "It is well not to depart from established forms and precedents which are the products of the wisdom and wide experience of the sages of the law.   It is said in the cases just cited that the prisoner must satisfy the jury, neither beyond a reasonable doubt nor yet by a preponderance of testimony, but simply satisfy them of the existence of facts and circumstances which mitigate the offense or which make good a plea of self-defense.   We are not prepared to say whether the jury can become satisfied of the existence of a fact unless the evidence in favor of its existence is stronger than or preponderates over that against its existence.   But what we do say is that it is best to follow settled forms in the trial of causes."   In the case of *State v. Byers,* 100 N. C., 512, the expression now objected to appeared in the charge of the Judge in the lower court, but there was no exception taken to it, and the language of the Court in the opinion did not make the slightest reference to it.   The case of *State v. Potts,* 100 N. C., 457, would seem to be clearly against the State's contention in this case.   The instructions as to the burden of proof in regard to insanity were there rejected because of the use in them of the very expression "if the jury are left in doubt,"

etc., and the Court expressly recognizes the rule to be that the defendant is required only to satisfy the jury. In *State v. Smith,* 77 N. C., 488, the objectionable words are used by *Faircloth, J.,* inadvertently, and without the slightest reference to the facts of the case, or the exceptions, which did not present the question at all, and the same may be said of the cases of *State v. Jones,* 98 N. C., 651, and *State v. Rollins,* 113 N. C., 722. The case of *State v. Mazon,* 90 N. C., 676, is an authority against the State, for in that case the principle which the Court, by *Smith, C. J.,* referred to as "settled and put at rest by judicial decisions," is the rule established by *State v. Willis,* 63 N. C., 26, and a long line of cases ending with *State v. Barrett,* 132 N. C., 1005, namely, that the defendant is only required to show matters in mitigation or excuse to the satisfaction of the jury. It is not necessary to review each of the cases cited by the State. We have carefully examined them and have not been able to find a single one among them, or indeed any other case, for we have diligently searched everywhere, in which such an instruction was held to be correct when exception was taken to it as in this case. In *Pool v. State,* 87 Ga., 526, the Court held that a request to charge that if there is any doubt the jury should acquit, required that the jury should be satisfied beyond all doubt and was therefore erroneous. It is conceded by the State that the defendant is not required to satisfy the jury beyond a reasonable doubt as to the mitigating circumstances, and if so how can he be required to satisfy them beyond all doubt by excluding "only doubt" which may be in their minds, as said in *Pool v. State, supra.*

When it is said that the jury cannot be *satisfied* that the plea of self-defense is true, if "they are left *in doubt* about it," nothing more or less is meant, or can be intended, than that the defendant must exclude from the minds of the jury

not only every reasonable doubt but every other kind of doubt, which is directly opposed to all authority. The true principle is stated in *State v. Byrd,* 121 N. C., 684, as follows: "Facts offered by the prisoner in excuse or mitigation need not be proved beyond a reasonable doubt, but only to the satisfaction of the jury," and this is all of it. · Referring to the rule (as thus stated) in *State v. Mazon,* 90 N. C., 683, *Smith, C. J.,* said: "If anything can be settled and put at rest by judicial decisions this principle has been, and we cannot now permit it to be drawn in question without impairing the confidence which ought to be reposed in the integrity and stability of the judicial administration of the law."

The suggestion that if we follow this established precedent of the law unrestrained violence and lawlessness may ensue, is one to which we can give no heed. If we take our eyes from the law and give attention only to consequences, or if we stop to consider who is morally right or wrong without regard to right or wrong as judicially ascertained, we will soon have a government not of law but without law, and the lawlessness which is sought to be avoided will follow as an inevitable result. We must apply the law as we find it to be and not as we think it should be, for to do the latter would be to legislate and not to expound.

But we think the Court inadvertently fell into error when it responded to the defendant's prayer for instructions and told the jury that, if the deceased advanced upon the defendant with a drawn knife in such manner as to cause him reasonably to apprehend, and he did actually apprehend, that he was about to be slain or to receive enormous bodily harm, the defendant had the right to stand his ground, and, if necessary, to take the life of the deceased without retreating. Thus far the charge was correct, but the Court added to this instruction the following: "Provided the assault made upon the defendant was felonious or with felon-

ious intent." As the Court superadded these words to the prayer of the defendant, or rather to its own response to that prayer, it certainly became necessary that some explanation should be made to the jury as to the meaning of the term "felonious or with felonious intent." The word "felonious" is a technical one, and not supposed to be understood by laymen of whom juries are composed. In *State v. Gaither,* 72 N. C., 458, it is said to be the duty of the Judge to explain to the jury what is meant by felonious intent, and that it is error not to do so. In *State v. Coy,* 119 N. C., 903, the Court says: "What is meant by felonious intent is a question for the Court to explain to the jury, and whether it is present at any particular time is for the jury to say," citing several cases. It was all important in this case, because of the connection in which the words were used, that such an explanation should have been made. The jury had already been told that if the defendant reasonably apprehended that he was about to be slain or to receive great bodily harm he had a right to kill his assailant without retreating, provided he acted in good faith and with ordinary firmness. This was the true principle, and was sufficient to impart to the jury a correct idea of what was required to constitute the right of self-defense. Why, then, add the proviso that the assault must have been made by the deceased with a felonious intent? This clearly implied that more than a mere intent of the deceased to kill or to do great bodily harm was necessary to justify the defendant in taking the life of his assailant, whereas the murderous intent of the deceased in assailing the defendant was itself a felonious intent, and all-sufficient as the intent required in order that the defendant might rightfully use such force as was necessary to defend himself even to the taking of his assailant's life.

But the addition to the defendant's prayer for instructions

was in itself erroneous. It was not necessary that the assault upon the defendant should have been felonious or committed with a felonious intent. If the assault was made with the purpose of inflicting great bodily harm, or, even if the defendant had a reasonably well-grounded apprehension that such was the fact, he had the right to act in defense of himself. An assault with an intent to kill is not a felonious assault. It was a felony at one time (Acts of 1868-9, chapter 167), but the law making it a felony was repealed by the Act of 1871, chapter 43, and since the date of the passage of that act it has been a misdemeanor. It is true that an assault with intent unlawfully to kill would be an assault with a felonious intent, but the Court did not only say that it must have been committed with a felonious intent, but that it must have been so committed *or* the assault itself must have been felonious. We have seen that neither was required in order to give to the defendant a perfect right of self-defense.

We cannot for a moment think that the right of a defendant to a correct statement of the law by the Court to the jury can, in any case, depend upon the mere possibility, and a very remote one, of there being some member of the jury with sufficient intelligence and knowledge to explain clearly the meaning of technical words to his fellows. That, as we understand it, is the peculiar office and function of the Judge. We doubt if any layman could give a correct definition of the word "felonious" as now used in the law of this State, this Court itself having had at least *some* difficulty in stating its exact meaning. The law presumes that the jurors do not know the law, and for this very reason enjoins upon the Judge to "state in a plain and correct manner the evidence given in the case and declare and explain the law arising thereon." The Code, section 413. This duty is not even perfunctory, and much less can it be omitted

upon the mere chance that the jury, or at least one of them, may know the law.

There is another objection to the proviso which was added to the instruction by the Court. The Court had charged the jury virtually by this instruction that an actual assault, with the intent to kill or to do great bodily harm, was not necessary, as he told the jury that if the defendant apprehended upon reasonable grounds that the deceased was about to assault him with that intent, "he had the right to stand his ground, and if necessary to take the life of his assailant without retreating"; and yet by the proviso the jury, in order to give the defendant the benefit of that instruction, were required to find that there was a felonious assault or an assault with a felonious intent. Under this instruction, the jury could not have acquitted the defendant if they had found that he had a well-grounded apprehension that the deceased was about to assault him with the intent to kill him or to do him great bodily harm, unless they further found that an assault had been actually committed with a felonious intent. We think that this instruction given in response to the prayer of the defendant was calculated to mislead the jury as to the true principle upon which the defendant's right of self-defense was founded, and it therefore necessarily prejudiced him.

In this connection it may be well to notice an expression of the Court in the general charge. The jury were instructed that in order "to justify the use of a deadly weapon in self-defense, it must appear that the danger was so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily harm, the shooting by the defendant was absolutely necessary; and it devolves upon the prisoner to make it appear to you that the deceased was the assailant and at fault, and that he, the prisoner, was not at fault, or that he, the prisoner, had really and in good faith

endeavored to decline a struggle before the shot was fired."
It is true the Court afterwards, in a very clear and forcible
manner, explained to the jury what kind of reasonable ap-
prehension that he was about to be killed or to receive great
bodily harm would have justified the defendant in acting
upon the facts and circumstances, as they appeared to him;
but the fact, as we pointed out in Barrett's case, *supra,* that
the Court afterwards gave this correct instruction, did not
cure the error of the charge as to the existence of the actual
or "absolute" necessity to kill. In this respect the charge
in Barrett's case and the charge in this case were substan-
tially alike. The error was not corrected by the subsequent
charge, nor was it intended to be, but the two instructions
conflicted, and the jury were thereby left in doubt and un-
certainty as to which of the two was right. What we said
in Barrett's case, upon the same state of facts, substantially,
is applicable here, namely, "It is well settled that when there
are conflicting instructions upon a material point a new
trial must be granted, as the jury are not supposed to be
able to determine when the Judge states the law correctly
or when incorrectly. We must assume in passing upon the
motion for a new trial that the jury were influenced in com-
ing to a verdict by that portion of the charge which was
erroneous," citing *Edwards v. Railroad,* 132 N. C., 99;
*Tillett v. Railroad,* 115 N. C., 662, and *Williams v. Haid,*
118 N. C., 481.

While the exception to this part of the charge is not very
specific, we have noticed it in order that attention may
again be called to the correct principle upon which a charge
in such a case should be based.

It is true that an actual necessity to kill in order to save
the defendant's own life would have justified the killing
of his assailant, if the defendant himself was not in fault
(*State v. Dixon, supra*), but it is not true actual neces-

STATE *v.* CLARK.

sity is the only ground upon which the defendant can claim that he killed in self-defense; for if there was this actual necessity, or if the defendant had a reasonably well-grounded apprehension of death or great bodily harm if he did not kill his assailant, his right of self-defense was complete.

If Stanberry was attempting to kill Miller or to do him great bodily harm, or if the defendant had a well-grounded belief or apprehension that he was attempting to do so, he had the right to interfere to prevent Stanberry from executing his intention, and if, while engaged in the act of interference for that lawful and commendable purpose, Stanberry advanced upon him in such a manner as to induce the defendant reasonably to apprehend, and defendant did actually apprehend, that he was about to be killed or to receive great bodily harm, he was·justified in taking the life of Stanberry in order to save his own or to prevent great bodily harm to himself, for, when he interfered, he was in no fault but was performing a legal duty, and therefore had a perfect right to stand and defend himself against the threatened attack.   Clark's Criminal Law, section 65, p. 164; *State v. Matthews, supra; State v. Rutherford,* 8 N. C., 458, 9 Am. Dec., 658.

There was error in the rulings of the Court in the respects we have stated and it will be so certified, to the end that there may be another trial.

New Trial.

CLARK, C. J., dissenting. The Court gave the following prayers at the request of the State: "2. If the jury are satisfied beyond a reasonable doubt that the prisoner slew the deceased with a deadly weapon, to-wit, a pistol, and are left in doubt as to the circumstances of mitigation or excuse offered by the prisoner or derived from the State's evidence, they should convict of murder in the second degree."

"3. If the jury are satisfied beyond a reasonable doubt that the prisoner slew the deceased with a deadly weapon, to-wit, a pistol, and are left in doubt from the whole evidence as to whether the deceased at the time he was slain was making a felonious assault upon the prisoner with a knife, either because he did not then have the knife or because he was too drunk to be capable of making such assault, and are left in doubt as to whether the prisoner at the time he slew the deceased believed, and had reasonable ground for believing, that the deceased was making such felonious assault upon him with a knife, then they should convict of murder in the second degree."

It is a complete answer to these exceptions that the prisoner was acquitted of murder in the second degree and could not have been prejudiced thereby. Besides, the charge was warranted upon all our authorities. When the killing with a deadly weapon is admitted or proved, the presumption is that the prisoner is guilty of murder in the second degree (*State v. Hicks,* 125 N. C., 636; *State v. Booker,* 123 N. C., 713; *State v. Dowden,* 118 N. C., 1145), and every matter of excuse or justification must be shown by the prisoner. *State v. Johnson,* 48 N. C., 266; *State v. Ellick,* 60 N. C., 451; *State v. Brittain,* 89 N. C., 481; *State v. Rollins,* 113 N. C., 722, p. 734, where several cases are cited; *State v. Barrett,* 132 N. C., 1005. From the foregoing cases it will appear that the doctrine is well established that the burden devolved upon the prisoner to prove all matters of excuse or mitigation, and this he must do to the satisfaction of the jury. *State v. Whitson,* 111 N. C., 695, syllabus 9, p. 696; *State v. Willis,* 63 N. C., 26; *State v. Locklear,* 118 N. C., 1154; *State v. Barrett, supra.* It was incumbent on the prisoner to *satisfy* the jury as to the circumstances offered by him in evidence to rebut the presumption of malice and to reduce the crime to manslaughter

or self-defense.   If the evidence left the jury in doubt, it fell below the required standard, and therefore the charge was not erroneous.

In *State v. Potts,* 100 N. C., at p. 463, the Court below refused instructions "to the effect that if, upon the evidence, the minds of the jury are left in doubt as to the sanity of the prisoner or of his malicious intent in taking the life of the deceased, it should be resolved in his favor, leading in one instance to acquittal, and in the other to the reduction of the grade of the offense to manslaughter."   The ruling of the Court below was affirmed by this Court.

In *State v. Byers,* 100 N. C., 512, the following charge, at p. 517, by the Judge below was affirmed by this Court, *Chief Justice Smith* delivering the opinion: "That when the killing was proved to have been done with a deadly weapon or admitted by the prisoner, the burden of showing the mitigating circumstances shifted to the prisoner, and this he must show, not by a preponderance of testimony or beyond a reasonable doubt, but to their satisfaction, and if the jury were left in doubt as to the mitigating circumstances, it would be a case of murder."

In *State v. Smith,* 77 N. C., at p. 488, *Faircloth, J.,* also says: "Homicide is murder unless it be attended with mitigating circumstances, which must appear to the satisfaction of the jury, and *if the jury are left in doubt on this point* it is still murder."   This is quoted *verbatim* and approved by *Davis, J.,* in *State v. Jones,* 98 N. C., at p. 657, as well as by *Smith, C. J.,* in *State v. Byers,* 100 N. C., 518, and it is again held in *State v. Rollins,* 113 N. C., p. 733.   *State v. Smith* on this point is also cited as authority but without *verbatim* quotation, in *State v. Brittain,* 89 N. C., 502; *State v. Mazon,* 90 N. C., 683; *State v. Whitson,* 101 N. C., 700, and by *Douglas, J.,* in *State v. Byrd,* 121 N. C., 686.   In *State v. Carland,* 90 N. C., at p. 674, *Ashe, J.,*

says: "a bare preponderance of proof will not do to show matters of mitigation or excuse unless it produces satisfaction of their worth in the minds of the jury." Certainly the jury cannot be *satisfied* of the truth of such defense when "they are left *in doubt* about it."

When counsel in zeal for their clients have sought to change this rule, whose maintenance the Court has heretofore deemed necessary for the prevention of murders, the Court has always refused, and *Smith, C. J.,* citing and approving *State v. Smith,* 77 N. C., 488, and other cases, says, in *State v. Mazon,* 90 N. C., 683: "If anything can be settled and put at rest by judicial decisions this principle has been, and we cannot now permit it to be drawn in question without impairing the confidence which ought to be reposed in the integrity and stability of the judicial administration of the law." These are wise words of one of the ablest and most distinguished of our predecessors, and the principle there followed has not till now been shaken in any subsequent case. The State, always at a gross and unfair disadvantage, by reason of the disparity in the number of challenges and other causes, in any effort to enforce the law in this State against homicides, has been reduced almost to a state of impotence, except when the killing has been by lying in wait, by the late statute and the construction placed upon it in *State v. Gadberry,* 117 N. C., 811, and similar cases. In view of the vast increase in the number of murders in this State which has followed, and which now amount almost to an epidemic, and the consequent increase in the number of attempts by the people themselves outside of the law to repress crime by lynchings, I view with regret the overruling of another long and unbroken line of precedents which our learned and able predecessors thought just and necessary that murders might less abound.

There has been no statute and no decision impeaching

the uniform and hitherto unanimous decisions of this Court to the above effect. As the burden was upon the prisoner to prove the matter in mitigation to the *satisfaction* of the jury, it inevitably follows that if the jury had been left in doubt the matter in mitigation was not proved to their satisfaction, and their verdict should have been rendered guilty of murder in the second degree. But their verdict establishes that they were so satisfied.

The prisoner requested the Court to charge the jury that "If they believed from the evidence that the deceased was engaged in a difficulty with Asa Miller and was attempting to cut said Miller with his knife in the presence of the prisoner, it was his duty to endeavor to suppress and prevent the same, and if in attempting to do so the deceased left off his difficulty with Miller and made upon the prisoner with a drawn knife in such a manner as to cause the prisoner to apprehend, and he did apprehend, that he was about to be slain or to receive enormous bodily harm, then the prisoner had a right to stand his ground and, if necessary, to take the life of the deceased without retreating."

This prayer was certainly defective in leaving out the word "reasonably," which the Judge supplied in the following instruction which he gave in lieu of that asked: "If the jury believe from the evidence that the deceased was engaged in a difficulty with Asa Miller and was attempting to cut said Miller with his knife in the presence of the prisoner, and the deceased was then capable of executing such a purpose, it was his duty to endeavor to suppress and prevent the same, and if in attempting to do so the deceased left off his difficulty with Miller and made upon the prisoner with a drawn knife in such a manner as to cause the prisoner to reasonably apprehend, and he did actually apprehend, that he was about to be slain or receive enormous bodily harm, then the prisoner had a right to stand his ground and

if necessary to take the life of the deceased without re-treating, provided the assault made upon the prisoner was felonious or with felonious intent." This was asked by the prisoner (except the additions), and was fully as favorable to the prisoner as he was entitled to under *State v. Gentry,* 125 N. C., 733, and the addition "provided the assault made upon the prisoner was felonious or with a felonious intent," was too plain and intelligible to require a translation of the word "felonious" to the jury. Twelve men of ordinary intelligence could not be empaneled who would not have at least some man upon it who could instruct those upon the jury who were so illiterate (if any) as not to understand the meaning of the Judge in that context. If, however, they could have understood the Judge to mean an assault with a lesser intent than homicide, then the error was in favor of the prisoner and he cannot complain. If the failure to explain the word "felonious" was error, it being prejudicial to the State only, it could not possibly be error against the prisoner.

The evidence was that the deceased, who was a lame man, was "perfectly drunk" and "wild drunk," and there was direct evidence that he was not trying to hurt Miller and that they were in a drunken squabble, and there were other circumstances which would have justified the jury in drawing the inference that the deceased was not capable of harming Miller or of executing any purpose to harm the prisoner if the latter had retreated, as he should have done, after the deceased left Miller, if he (the prisoner) could do so with safety, and thereby have avoided taking the life of a human being. "The dead are always wrong" says the proverb truly, and the deceased is not here to give his version of the slaying, but if upon this evidence the condition of the deceased was such that the prisoner could have retreated with safety, but he preferred rather to stand his ground and kill

the deceased, without overpowering necessity to prevent injury to himself, then the verdict of manslaughter and the short term in the Penitentiary imposed should not be complained of by him. Human life ought to retain something of its former sacredness in the eye of the law.