GastoN, Judge.
From the case which has been stated by the Judge who presided at the trial, and which constitute a part of the record before us, it appears that it was not controverted, but that the prisoner had committed the homicide wherewith he was charged, and that the only question was as to the degree of guilt which the law attached to the fatal deed. Upon this question, the jury doubted, and asked for specific instructions; and it was to enable them to come to a correct conclusion upon this question, that the specific instructions set forth in the case were given. It is not for us to determine whether the verdict was warranted by the evidence, but it is our duty to examine whether the law was correctly expounded.
*494 |n the investigation of this question, it was necessary that the 3ury should, in the first place, ascertain whether the prisoner commenced the affray with a pre-conceived purpose to IqH the deceased, or to do him great bodily harm. For if he did, then there was nothing in the'subsequent occurrences of the transaction, which could free him from the guilt of murder. If the first assault was made with this purpose, the malice of that assault, notwithstanding the violence with which it was returned by the deceased, communicates its character to the last act of the prisoner. It is laid down as settled law, that if a man assault another with malice pre-pense, even though he should be driven to the wall, and kill him there to save his own life, he is yet guilty of murder in respect of his first intent. Hawkins Book, 1 ch. 11. sect. 18, and ch. 13, sect. 26. Of that part, therefore, of his Honor’s instructions which in the case is called “ the first proposition,” and which declaréd, as a conclusion of law, that the prisoner was guilty of murder, if the jury were satisfied from ihe evidence that the assault was made by him in order to have a pretence to kill the deceased, or to cut him with the knife, the prisoner has no cause to complain. Such craft, indeed, would but the more strongly indicate the heart fatally bent on mischief.
There was certainly evidence well deserving to be weighed by the jury, in coming to a correct conclusion upon this enquiry. But what.was that conclusion, we have not the means of knowing. They might have believed, notwithstanding the testimony as to antecedent quarrels, and the ren-counter between the parties, and in relation to threats of vengeance by the prisoner, that the transaction which they were then examining sprang from the passions of the moment. For certainly where two persons have formerly fought on malice, and are apparently reconciled, and fight again on a fresh quarrel, it shall not be intended that they were moved by the old grudge, unless it so appear from the circumstances of the affair. Hawkins B. 1 ch. 13, sect. 30. If, upon consideration of all the evidence, the jury came to the conclusion that the first assault of the prisoner was not of malice pre-pense, then the subsequent occurrences demanded their care *495 ful consideration, because upon these the prisoner’s guilt might be extenuated into manslaughter, or excused as a hom-idle in self-defence.
So much of the instructions given, upon this view of the case, as relates to excusable homicide, is. in our opinion, not liable to exception. Even if the prisoner had not begun the affray, but had been assaulted in the first instance, and then a combat had ensued, be could not excusé himself as for a killing in self-defence, unless he had quitted the combat before a mortal blow was given, if the fierceness of his adversary permitted, and retreated as far as he might with safety, and had then killed his adversary of necessity, to save bis own life. But the remaining part of the instructions, and that part which may have had a decisive influence upon the verdict, is, in our judgment, erroneous. According to this, which is laid down as “the second proposition,” the jury were instructed, “ that if the prisoner gave the first blow, and was then cut by the deceased, although he might have been agitated by excitement and anger, yet if they collected from what he said and did, when or just before he gave the mortal blow, that iu fact he was possessed of deliberation and reflection, so as to be sensible of what he was then about to do, and did the act intentionally, it was murder.” This proposition, as we understand it, and as we must believe it to have been understood by the jury, we are very confident cannot be sustained.
The proposition supposes that the first assault was made by the prisoner without malice, and that the fatal wound was given while under the influence of indignation and resentment, excited by the excessive violence with which he had been in turn assailed by the deceased — but it refuses to the prisoner the indulgence which the law accords to human infirmity suddenly provoked into passion, if such passion left to him so much of deliberation and reflection as to enable him to know that he was about to take, and to intend to take, the life of his adversary. No doubt can be entertained, and it is manifest that none was entertained, by his Honor, but that the excessive violence of ¡he deceased, immediately following upon the first assault, constituted what the law deems a pro *496 vocation sufficient to excite furious passion in men of ordin-ary teruPers- The case does not state tha* ®Lrst blow giv-. en by the prisoner was such as to endanger life or to threaten great bodily harm; nor that it was immediately followed up by further efforts or attempts to injure the deceased. It must be taken to have been a battery of no very grievous kind, and it justified the deceased in resorting to so much force on his part as was reasonably required for his defence , — and in estimating the quantum of force which might be rightfully thus used the law will not be scrupulously exact. But when an assault is returned with a violence manifestly disproportionate to that of the assault, the character of the combat is essentially changed, and the assaulted becomes in his turn the assailant. Such, according to the case, was the state of this affray, when the mortal wound was given. To avenge a blow, the deceased attacked the prisoner with a knife — made three cuts at him — and gave him a severe wound in the abdomen. If instantly thereupon, in the transport of passion thus excited, and without previous malice, the prisoner killed the deceased, it would have been a clear case of manslaughter. Not because the law supposes that this passion made him unconscious of what he was about to do, and stripped the act of killing of an intent to commit it — . but because it presumes that passion disturbed the sway of reason, and made him regardless of her admonitions. It does not look upon him as temporarily deprived of intellect, and therefore not an accountable agent; but as one in whom the exercise of judgment is impeded by the violence of excitement, and accountable therefore as an infirm human being. We no where find that the passion which in law rebuts the imputation of malice, must be so overpowering as for the time to shut out knowledge and destroy volition. All the writers concur in representing this indulgence of the law to be a condescension to the frailty of the human frame, which, during the furor brevis, renders a man deaf to the voice of reason, so that although the act done was intentional of death, it was not the result of malignity of heart, but imputable to human infirmity.
The proper enquiry to have been submitted to the jury on *497 this part of the case was, whether a sufficient time had elapsed after the prisoner was stabbed, and before he gave the mortal wound, for passion to subside and reason re-assume her dominion — for it is only during the temporary dethronement of reason by passion, that this allowance is made for man’s frailty. And in. prosecuting this enquiry, every part of the conduct of the prisoner, as well words as acts tending to shew deliberation and coolness on the one side, or continued anger and resentment on the other, was fit to be considered, in order to conduct the jury to a proper result.
™p™n-h' tempiuous rum, are no! a snffi-cientprovo-uniing from the guilt of n^a dead-h "“i;»», fesis an in-g°eat° ThU ruiehowev-obtain s“c,> ¡nsuffi-cádoí' tile S^ludl cI®n|y heat- and engage in "¿mbat terms.
The Attorney General, in his argument, referred to a class of cases which probably misled.the Judge in laying down the proposition before us — in which circumstances apparently unimportant, but indicative of deliberation, have been thought to establish malice and repel the plea of human firmity. The explanation given by the text writers will shew that the doctrine in these cases, although in some respects analagous to that which obtains in a killing upon gal provocation, is not identical with it. The general rule of law is, that words of reproach or contemptuous gestures, , , or the like offences against decorum, are not- a sufficient pro-vocatiort to free the party killing from the guilt of murder, where he useth a deadly weapon, or manifests an intention , , ... , ' , , to do great bodily harm. This rule, however, does not tain where because of such insufficient provocation, the parties become suddenly heated, and engage immediately in mortal combat, fighting upon equal terms. But deliberate duelling, if death ensue, however fairly the combat may conducted, is, in the eye of the law, murder. The punctilios of false honour, the law regards as furnishing no excuse for homicide. He who deliberately seeketh the blood of another, in compliance with such punctilios, acts in open defiance the laws of God and of the State, and with that wicked purpose which is termed malice aforethought. While, therefore, because of presumed heat of blood, the law extenuates into manslaughter a killing upon such sudden rencounter, , , , & * r . „ . , . although proceeding upon an insufficient provocation, it withholds this indulgence when, from the circumstances of the case, it can be collected that, not heated blood but a tied purpose to vindicate offended honour,'even unto.slaying *498 in defiance of law, was the actual motive which urged on to the combat.
In the conclusion of his instructions, the Judge informed the jury, “ that if they should believe according to the second proposition, that the prisoner was not possessed of deliberation and reflection at the time he gave the mortal blow, but acted under the influence of passion excited by the provocation then received, it would be a case of manslaughter.” It is manifest that it there was error in the proposition which we have been examining, this general instruction did not correct it; for the jury were expressly referred to that proposition for the legal meaning of deliberation and reflection;” and according to that proposition, there was deliberation and reflection, “ if the prisoner was sensible of what he was a • bout to do, and did the act intentionally.”
Entertaining a full conviction that in this the jury were misdirected, we are of opinion that the verdict below ought to be set aside, and a venire de nooo awarded.- This decision must be certified to the Superior Court of Wake, with directions to proceed agreeably thereto and to the laws of the State.
Pek Curiam. Judgment to be reversed.