STATE v. WILLIAM WHITSON et al.

*Murder—Verdict—Jury — Charge— Prayer for Instruction— Practice—Evidence—Dying Declaration—Res Gestæ—Reasonable Doubt.*

1. When, in a trial for murder, the foreman responded "guilty of murder in the second degree," it was proper to instruct the jury that such verdict could not be rendered under our laws ; and where, upon further instruction as to what constituted the law of manslaughter the jury could not agree up to the time the term was about to expire: *Held*, the order of mistrial, was not error.

2. The practice of drawing a jury from the box is favored by the Court, but this law is not mandatory.

3. The dying declarations of the deceased written down and sworn to at the time they were spoken, are to be used solely to refresh a witness's memory.

4. The fact that one of the prisoners went, several hours after the shooting, to the house of the dying man, and offered to wait on him, is no part of the *res gestœ*, and was properly excluded,

5. It is competent to show the prisoners were living under assumed names at the time of arrest.

6. Where several persons are attempting to kill another, or aiding and abetting, and one does the killing, all may be found equally guilty.

7. The charge that the dying declaration should be received "cautiously, not superstitiously," is a sufficient response to the prayer that they should be received with much caution.

8. No set formula is required in defining "reasonable doubt," it means fully satisfied, or satisfied to a moral certainty.

9. Where killing with a deadly weapon is shown, the law presumes malice, and the burden of showing matter of excuse or mitigation is upon the prisoner, not beyond a reasonable doubt, but to the satisfaction of the jury.

This was an INDICTMENT for murder, tried at the Spring Term, 1892, of MITCHELL Superior Court, before *Graves, J.*
The facts may be gathered from the opinion.

*The Attorney General,* for the State.
Messrs. *W. H. Bower* and *W. H. Malone,* for defendant.

CLARK, J.: The pleas of former conviction, of former acquittal and of former jeopardy were properly overruled. When the foreman responded, "guilty of murder in the second degree," the Judge very properly told the jury that such was not a verdict which could be rendered under our laws, and instructed them again as to what would constitute murder and what constitutes manslaughter. The foreman then expressed himself in favor of a verdict of manslaughter, but four of the jurors dissented. The jury were kept together from Tuesday until Saturday night, when the term of Court would expire, and being polled by the Court, each juror

responded that he did not think the jury could agree.   The
Court thereupon found the fact that the jury could not agree,
and the prisoners themselves assenting, ordered a mistrial.
In this there was no verdict of either acquittal or conviction.
The jury neither said, nor intended to say, that the defend-
ants were not guilty.   They refused to assent to a verdict of
manslaughter.   They did not agree upon any verdict which
was responsive to the issues.   When they offered an insensi-
ble verdict the Court properly refused to receive it, and
instructed the jury as to the verdicts which they could
render.   *State* v. *Arrington*, 7 N. C., 571 ; *State* v. *Hudson*, 74
N. C., 246; *State* v. *Whitaker*, 89 N. C., 472; *State* v. *Shelly*, 98
N. C., 673.   Upon the facts found, the Court was justified in
directing a mistrial after such lapse of time and effort to
agree upon a verdict.   *State* v. *Honneycutt*, 74 N. C., 391.
Besides, the prisoners cannot be heard now to object on that
ground, as they assented to the mistrial.   *State* v. *Davis*, 80
N. C., 384.

The drawing of the jury from the box was authorized by
the statute, *The Code*, § 1739, and is favored by the Courts,
though the requirement of the statute is not mandatory.
*State* v. *Brogden*, at this term.   This section provides that the
jurors so drawn should be freeholders.   The mode adopted
by the Judge to ascertain that fact was unobjectionable.   It
could not prejudice the prisoners, who had no right to have
any but freeholders upon the special *venire*.   Though if the
Judge had drawn the names from the box without this pre-
caution, it would not have been error, since either the State
or defendant could at the trial when any juror was presented
have challenged him for the lack of any legal qualification.
But the course pursued by the Judge was commendable.

The dying declarations of the deceased were given in evi-
dence by several witnesses.   One witness, a Justice of the
Peace, stated that he wrote them down at the time and swore
the deceased to the truth of the statement.   This written state-

ment the witness used to refresh his memory, and he repeated it *verbatim* to the jury, so the case on appeal states. The Solicitor offered to permit the witness to read the writing to the jury. The prisoners excepted upon the ground that the written statement was the best and primary evidence. This contention is unfounded. The declarations made by the deceased were verbal. That the witness wrote them down at the time gave the writing no higher dignity. Their sole use was to refresh the witness's memory. Nor does it add to their value that the deceased was sworn to the statement. The statement was not signed by the deceased, but, had it been signed, as well as sworn to, it would have made no difference. If the deceased spoke under belief of impending death, his declaration has all the validity of a statement under oath, and swearing him to it or signing it could not add to its validity, nor would the fact that the witness wrote it down have other effect than a memorandum to refresh his memory. Certainly the prisoners cannot object, since the Solicitor offered that the witness should read the paper to the jury, which was declined.

It was not error to reject the offer to show that several hours after the shooting, one of the prisoners went to the house of the dying man and offered to wait upon him. This was no part of the *res gestæ*, and a party cannot be allowed thus to make evidence for himself after the event.

The defendants fled the State, and had been absent many years when arrested and brought back. We fail to see the force of the objection to showing that when so arrested they were both living under assumed names. Such evidence is competent for the same reason that evidence of the flight itself was admissible.

The uncontradicted evidence was that the deceased was shot while endeavoring to escape, and there was evidence tending to show that the two defendants and another brother (since dead) were all three shooting at the deceased while

running from them, and that one of these shots killed him. The charge is carefully worded so as to make the guilt or innocence of each prisoner depend upon his own conduct. It was not error to refuse to tell the jury that if they found that one of the parties named in the indictment slew the deceased, the others would not be guilty, unless there was a conspiracy or common design to take the life of the deceased, and the Court properly charged that if the jury found that one of the defendants slew the deceased under circumstances which would make him guilty of murder or manslaughter, any one of the other defendants who was then and there present aiding, encouraging and abetting the killing, would be guilty of the same degree of crime as the man who fired the fatal shot. The Court properly told the jury, upon the evidence, there was nothing to support the plea that the killing was done in self-defence; and the second prayer for instruction was properly refused. *State* v. *Scott*, 26 N. C., 410; *State* v. *Hill*, 20 N. C., 491.

The charge of the Court that dying declarations should be received " carefully, but not superstitiously," was not erroneous, especially with the full explanation of the nature of such evidence, and the charge that, there being no cross-examination, the jury should receive it with care. It was not error to fail to charge in the identical words asked, that they must be received " with much caution." This was substantially done. Nor was it error not to define reasonable doubt in the words the defendants asked. As this Court has said, no set formula is required, and the Court did its duty in saying, " what is reasonable doubt is very difficult to explain more fully than the words imply; the Court says it means fully satisfied, or satisfied to a moral certainty."

It was not error to charge that when the killing with a deadly weapon is shown, the law presumes malice, and the burden of proving matter of excuse or mitigation is upon the prisoner—not beyond a reasonable doubt, but to the sat-

isfaction of the jury. *State* v. *Gooch*, 94 N. C., 987 ; *State* v. *Smith*, 77 N. C., 488.

The tenth assignment of error cannot be sustained. *State* v. *Howell*, 31 N. C., 485; *State* v. *Boon*, 82 N. C., 637.

The other exceptions to the charge are without merit. The charge is a well-considered one, and the rights of the prisoners were fully guarded. Upon a consideration of the whole case and all of the exceptions, we do not discover that there has been any error of which the appellants can complain

No Error.