### STATE v. THEODORE LUCAS.

(Filed 29 October, 1913.)

**1. Homicide—Murder—Self-defense.**

Self-defense may not be successfully maintained where the prisoner has wrongfully assaulted the deceased or provoked a fight resulting in the latter's death.

**2. Same — Unprovoked Assault — Necessity to Kill—Trials—Questions for Jury.**

Where an assault is unprovoked and made with the intent and present ability to kill, the person assaulted is not required to show that he endeavored to withdraw from the conflict before making the necessary resistance to protect his life or save himself from great bodily harm, before taking the life of his assailant, though it is otherwise if the assault is not felonious, for then he is required to retreat to the wall, as far as consistent with his own safety; and in order to establish self-defense in either case, the necessity to kill is required to be shown; but in the first instance it is to be determined by the jury in view of the fact that the assailed may stand his ground, and in the other, in view of the fact that it is required that he show that he had retreated as far as consistent with his own safety.

**3. Instructions—Murder—Self-defense.**

In this case it is held that the judge's erroneous instruction upon the doctrine of self-defense on a trial for murder was not cured by construing it with a former portion of his charge, such former portion referring in general terms to the doctrine of self-defense as being a killing from necessity, and it is in the part objected to that he lays down the rule on the subject for the jury's guidance, and it is the only place he intends or professes to do it.

APPEAL by defendant from *Ferguson, J.,* at May Term, 1913, of CUMBERLAND.

Indictment for murder. On the trial below it was proved that on 15 March, 1912, in Cumberland County, the prisoner, Theodore Lucas, shot the deceased, Gilbert McDougal, with a pistol, inflicting wounds from which he shortly died.

There was evidence on part of the State tending to show that at the time there was altercation between the prisoner

and deceased, when the latter was seen to put his hand on the prisoner's shoulder, when the latter drew his weapon and fired the shots which resulted fatally, and there was no adequate provocation or legal excuse for the homicide on the part of the defense.

The prisoner, witness in his own behalf, testified in part as follows: "I am the defendant in this action. I shot Gilbert McDougal. When I shot him, he came up to me, he did, and asked me what was that about me sending for him not to come up there. He was a married man, and I had done discussed the matter, and said they just couldn't be together so much, and I was the same as her brother. He made threats that he was going to get drunk, and what he was going to do to me. When I shot him he was making towards me with a knife. He caught my arm. I was trying to keep him from striking me, and was running backwards, and the first time I shot him I shot myself through the arm. He struck at me and caught and pulled me this way, and I shot myself through the arm. He run me ten or fifteen steps after he was shot three times, and the last one he said: 'You damn son of a bitch, you better run. If I get you I will kill you.' "

There was other testimony from eye witnesses of the occurrence, tending to support this statement and tending to show that the homicide was committed by the prisoner in his necessary self-defense. There was evidence also to the effect that a knife was found near the deceased when he fell, one witness saying when so found it was shut, and another that it was open.

The court being of opinion that there was no evidence to justify a conviction of murder in the first degree, the case was submitted on murder in the second degree, manslaughter, or excusable homicide.

There was verdict, Guilty of murder in second degree. Judgment, and prisoner excepted and appealed.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*

*Shaw & McLean for defendant.*

HOKE, J., after stating the case: After charging the jury correctly as to murder in the second degree and manslaughter, the court below, in reference to the prisoner's claim of self-defense, stated the rule as follows: "But if you are satisfied he was without fault at the time, that he did not enter into the quarrel willingly, that he did not enter into the fight maliciously, but that, having entered into the fight, he quit it and went as far as he could with safety, and was followed by the deceased and then pushed to the wall, and shot and killed the deceased, then he would be acting in self-defense"; and to this the prisoner duly excepted.

It is held for law in this State that when an unprovoked and murderous assault is made on a citizen, he is not required to retreat, but may stand his ground, and take the life of the assailant if it is necessary to do so to save himself from death or great bodily harm. *S. v. Hough,* 138 N. C., 663; *S. v. Blevins,* 138 N. C., 668; *S. v. Dixon,* 75 N. C., 275.

In the *Hough case* the doctrine is stated as follows:

"If an assault be committed under such circumstances as to naturally induce the defendant to believe that the deceased was capable of doing him great bodily harm, and intended to do it, then the law will excuse the killing, because any man who is not himself legally in fault has the right to save his own life, or to prevent enormous bodily harm to himself."

"4. There is a distinction between an assault with felonious intent and assault without felonious intent; in the former a person attacked is under no obligation to fly, but may stand his ground, and kill his adversary, if need be; in the latter, he may not stand his ground and kill his adversary if there is any way of escape open to him."

In *Blevins' case,* speaking to the position, the Court said: "It has been established in this State by several well considered decisions that where a man is without fault, and a murderous assault is made upon him—an assault with intent to kill—he is not required to retreat, but may stand his ground, and if he kill his assailant, and it is necessary to do so in order to save his own life or protect his person from great bodily harm, it is

excusable homicide, and will be so held (*S. v. Harris,* 46 N. C., 190; *S. v. Dixon,* 75 N. C., 275; *S. v. Hough, ante,* 663); this necessity, real or apparent, to be determined by the jury on the facts as they reasonably appeared to him. True, as said in one or two of the decisions, this is a doctrine of rare and dangerous application. To have the benefit of it, the assaulted party must show that he is free from blame in the matter; that the assault upon him was with felonious purpose, and that he took life only when it was necessary to protect himself. It is. otherwise in ordinary assaults, even with deadly weapon. In such case a man is required to withdraw if he can do so, and to retreat as far as consistent with his own safety. *S. v. Kennedy,* 91 N. C., 572. In either case he can only kill from necessity. But, in the one, he can have that necessity determined in view of the fact that he has a right to stand his ground; in the other, he must show as one feature of the necessity that he has retreated to the wall."

It will be noted from these citations (and they are in accord with the doctrine prevailing here) that when one is subjected to an unprovoked assault, felonious or otherwise, he is not always required to quit the combat in order to maintain the position of self-defense. As we have seen, if the assault is unprovoked and with intent to kill, the person may stand his ground; and if an ordinary assault, he must retreat to the wall, that is, withdraw as far as safety permits. This principle of requiring one to quit the fight in order to maintain self-defense obtains only when the person who slays another has provoked the dispute or entered into it unlawfully."

In the first part of this excerpt, therefore, the court was correct in holding that in order to establish self-defense the prisoner must be without legal fault in entering upon the difficulty; but, having said this, and on the facts in evidence, he committed error in imposing on the prisoner, as he did, the further burden of showing he *"quit the fight,"* went as far as he could with safety, and was followed by deceased, and then, being pushed to the wall, he shot and killed the deceased.

It is urged for the State that while this direction, when standing alone, may be subject of criticism, it should not be held for reversible error, because in the charge as a whole the position of self-defense has been fairly presented. We are fully mindful of this wholesome rule for construing a judge's charge, which has been approved in several of our recent decisions, but are not at liberty to adopt the suggestion of the learned counsel in the present instance. While his Honor in a former part of the charge made one reference in general terms to the doctrine of self-defense as being a killing from necessity, it is in this present portion that he lays down the rule on the subject for the jury's guidance, and it is the only place he intends or professes to do it. There is nothing in any other portion of the charge that corrects or tends to correct or qualify the rule as stated, and, in our opinion, it amounts to reversible error, entitling the prisoner to a new trial. It is so ordered.

New trial.