After stating the case: The prisoners introduced as a witness Mrs. Minnie Foster, who gave material testimony in their behalf. The State, for the purpose of impeaching her, handed her a letter. The case states: "This letter was lost by the prosecutors during the trial, and could not be produced. The letter in substance was very affectionate and very solicitous that Will Harris should visit Mrs. Foster at times when Foster, her husband, was absent, and was sufficient to indicate that the writer was seeking amorous and illicit intercourse with Harris. Counsel read the letter at length to witness, and she said: `I never wrote it to Will Harris for myself, and nobody need say I did. I wrote it for Fairy, if it is the one I wrote. I was in jail once; stayed pretty near five weeks. They never have had me in the lockup.'" If the witness had denied that she had written the letter, the matter being collateral to the issue, her answer would have been final and could not have been contradicted. But she admitted its authorship, adding merely that she wrote for her daughter, Fairy Foster, and the letter itself disclosed that she was having or wished to have illicit relations with Will Harris, in the absence of her husband. This, of course, tended to impeach her character and to impair her credibility. It was just as competent, for this purpose, as if she had admitted having a conversation with Harris to the same effect. Her statement that she wrote for her daughter tended further to impeach her, as the letter, on its face, conclusively proved the contrary. It was the contents of the letter, written by her, that impeached her character. This Court said in S. v. Davidson,67 N.C. 119: "The doctrine, in regard to asking questions of witnesses, tending to disparage them, has been greatly modified in modern times, and it is now held that you may put almost any question to the witness, and that the witness is bound to answer it, unless the answer might subject him to an indictment, or to a penalty under the statute. The question, we think, should have been permitted, and he was bound to have answered it." S. v. Exum, 138 N.C. 599; S. v. Fisher, (361)149 N.C. 557; S. v. Holly, 155 N.C. 485.
We have conceded the general rule, as stated in 1 Greenleaf on Evidence, sec. 449, cited by the prisoner's counsel, as follows: "It is a well-settled rule that a witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence, if he should deny it, thereby to discredit his testimony. And if a question is put to a witness which is collateral and irrelevant to the issue, his answer cannot be contradicted, but is conclusive against him." See, also, S. v. Patterson, 24 N.C. 346.
In this case, though, Mrs. Foster was impeached by her own admission that she wrote the letter and the very nature of its contents. The letter, *Page 322 
therefore, was not introduced to contradict her, but merely to show the bearing of her admission as to its authorship.
The prisoners relied on S. v. Holly, supra, but their contention in this respect grows out of a misapprehension as to the scope of that decision. There it was proposed to show by a witness, introduced by the prisoner to prove his good character, that it was rumored Holly had killed his wife. This was going into details. It was competent to test the value of the witness's opinion as to his general character, but not to call for hearsay as to specific acts. This is an eminently just rule, as will appear from these reasons, stated by Justice Allen in that case: "The defendant did not testify in his own behalf, but he was entitled to introduce evidence of his good character, as a circumstance tending to show the improbability of his having committed the crime alleged against him. S. v. Laxton, 76 N.C. 216;S. v. Hice, 117 N.C. 783. When he avails himself of this right, the State can introduce evidence of bad character, but cannot, by cross-examination or otherwise, offer evidence as to particular acts of misconduct. The rule is just, and based upon sound reason. A party charged with crime may be prepared to defend an attack upon his general character, which is a single fact, but he could not have at the trial witnesses to explain the conduct of a lifetime. Again, questions of this character, if permitted, would tend to multiply issues would (362) needlessly prolong trials, and would be calculated to distract the minds of jurors from the real issue. If a witness may state that he has heard that the defendant had been charged with killing his wife, the defendant ought to be allowed, in reply, to show that the charge is false, and to do so might involve the examination of many witnesses. If one collateral question of this character can be raised and tried, the same rule would permit a hundred others. The authorities in this State are numerous and uniform that it is error to allow such questions on the cross-examination of a witness as to character." But that is far from sustaining this objection. We are not admitting evidence of specific or isolated acts, in regard to another witness's character, but only the admission of the witness herself as to her own virtue and chastity.
The second exception was taken to the refusal of an instruction that there is no evidence of Robertson's guilt. He was the aggressor and gave the first provocation that brought on the fight. The evidence showed that he handed the pistol to Ceph Foster, who killed the deceased with it, and also told him to shoot. He was not without fault, but, on the contrary, was the first and principal offender, and he therefore lost the benefit which otherwise he might have derived from the principle of self-defense. S. v.Blevins, 138 N.C. 668; S. v. Lucas, 164 N.C. 471. A killing with a deadly weapon being shown and admitted, the burden *Page 323 
was upon the prisoner to show matter in excuse or mitigation. There was evidence that Robertson was present, aiding and abetting Foster in the commission of the homicide, and the judge properly refused the prayer for instruction. Revisal, sec. 3287; S. v. Whitson, 111 N.C. 695; S. v.Chastain, 104 N.C. 900; S. v. Cockman, 60 N.C. 484; S. v. Simmons,51 N.C. 21; S. v. Hildreth, 31 N.C. 440; 12 Cyc., 186; 21 ibid., 683. "Where, in a trial for murder, it appeared that two persons had formed the purpose of wrongfully assailing the deceased, and one of them, in furtherance of such purpose, with a deadly weapon and without provocation, slew him, it was held that both were guilty of murder." S. v. Simmons,supra, See, also, S. v. Gooch,94 N.C. 987. There was nothing to excuse the killing, and defendant Robertson clearly participated in it, and, as we have said, played an important and active part; he provoked the fight and was a leader in the fray, and is guilty of manslaughter, at least. S. v.Garland, 138 N.C. 675.
The third exception, taken to the refusal of the court to charge that Foster had the right, in his own house, to prevent the commission of a felony, is also untenable. He had that right, it is true, if exercised in a proper and lawful way; but it must be remembered that Milton Patterson was retreating when he first fired, and then Foster continued to shoot at him when there was absolutely no necessity for doing so in order to protect himself or his home, and he showed no remorse, after the killing, for his cruel act, but was wholly indifferent to the homicide, expressing even satisfaction at the tragic result. The manner of the killing by Foster, his acts and conduct attending its commission, and his declarations immediately connected therewith, were evidence of express malice. 21 Cyc., 889, 897, 924, 925; S. v. Jarratt, 23 N.C. 76. "The fierceness and atrocity of the attack, the circumstances under which it was made, the nature and extent of the injury inflicted, the condition of the body and wearing apparel, the deadly nature of the weapon used and the manner of using it, and all other facts constituting the res gestae, are proper subjects of inquiry on the question of malice and intent. Subsequent statements of the accused showing that his hatred of the deceased was so intense that it pursued him beyond the grave, are admissible on the issue of express malice. So, also, on a trial for assault with intent to murder, subsequent statements of the assailant showing bitter hatred toward the person assaulted are admissible to show malice at the time of the assault. Any unseemly conduct toward the corpse of the person slain or any indignity offered it by the slayer should go to the jury as evidence of malice. His jeerings at the weeping relatives and *Page 324 
friends of the deceased may be considered as bearing upon the question of the malice of the accused." 21 Cyc., pp. 897, 898.
There is no circumstance in the case which can be fairly regarded as upholding the contention that Foster was defending "his castle" or his property or any member of his family. It was nothing but a common brawl, for which he and Robertson, his codefendant, were mainly (364) responsible. The principle that a man may defend his home against unlawful and unwarranted attacks has no application to these facts. 21 Cyc., 828; 1 Bishop Cr. Law (11 Ed.), 614, 806, and sec. 636; S. v. Taylor, 82 N.C. 554.
The fourth assignment of error to the charge of the court, that if defendants fought willingly they cannot avail themselves of the principle of self-defense, is sufficiently answered in S. v. Garland, 138 N.C. 675, by Justice Hoke: "It is the law of this State that where a man provokes a fight by unlawfully assaulting another, and in the progress of the fight kills his adversary, he will be guilty of manslaughter at least, though at the precise time of the homicide it was necessary for the original assailant to kill in order to save his own life. This is ordinarily true where a man unlawfully and willingly enters into a mutual combat with another and kills his adversary. In either case, in order to excuse the killing on the plea of self-defense, it is necessary for the accused to show that he `quitted the combat before the mortal wound was given, and retreated or fled as far as he could with safety, and then, urged by mere necessity, killed his adversary for the preservation of his own life.' Foster's Crown Law, p. 276. The same author says on page 277: `He, therefore, who in case of a mutual conflict would excuse himself on the plea of self-defense must show that before the mortal stroke was given he had declined any further combat and retreated as far as he could with safety, and also that he killed his adversary through mere necessity and to avoid immediate death. If he faileth in either of these circumstances he will incur the penalty of manslaughter.' To the same effect is Lord Hale, who lays it down, `That if A. assaults B. first, and upon that assault B. reassaults A., and that so fiercely that A. cannot retreat to the wall or other non ultra without danger of his life, and then kills B., this shall not be interpreted to be se defendendo, but to be murder or simple homicide (manslaughter), according to the circumstances of the case; for, otherwise, we should have all the cases of murder or manslaughter, by way of interpretation, turned into se defendendo.' This principle was approved and applied in this State in S. v. Brittain, 89 N.C. 481."
See, also, S. v. Yarbrough, 8 N.C. 78, and substantially to the (365) same effect, S. v. Simonds, 154 N.C. 197; S. v. Clark, 134 N.C. 698; S. v. Brittain, 89 N.C. 481; S. v. Dixon, 75 N.C. 275. *Page 325 
But in this case the prisoners not only fought willingly, but aggressively, and the whole difficulty is traceable to their conduct.
There was no error in that part of the charge relating to the presumption arising from killing with a deadly weapon, and as to the burden of proof. The court stated that the law presumes malice from such a killing, and that, nothing else appearing, it would be murder in the second degree, and the burden is upon the prisoners to satisfy the jury as to any matter of justification, excuse, or mitigation. This is the correct rule.S. v. Yates, 155 N.C. 450; S. v. Rowe, ibid., 436; S. v. Simonds,154 N.C. 197; S. v. Brittain, 89 N.C. 481. See, also, S. v. Cox,153 N.C. 638; S. v. Worley, 141 N.C. 764. If the prisoners desired any fuller or more exact instructions, they should have asked for them by a specific prayer, those given being substantially correct. Simmons v.Davenport, 140 N.C. 407; McKinnon v. Morrison, 104 N.C. 354; Pate v. Bank,162 N.C. 508; Monds v. Dunn, 163 N.C. 108. This is the settled rule.
The last assignment of error to the instruction of the court, as to the different verdicts that could be returned, according as the jury might find the facts to be, is not supported by the record. The judge distinctly told the jury, several times, that they could acquit the prisoners, and the last instruction was intended merely to inform them how they could find in the event that they did not acquit. The charge must be construed as a whole. S.v. Exum, supra.
A careful review of the record has disclosed no error which entitles the prisoners to another trial.
No error.
Cited: S. v. Pollard, 168 N.C. 121; S. v. Cooper, 170 N.C. 725; S. v.Killian, 173 N.C. 796; S. v. Westmoreland, 181 N.C. 594; S. v. Winder,183 N.C. 778; S. v. Johnson, 184 N.C. 645; S. v. Baldwin, 184 N.C. 792; S.v. Steen, 185 N.C. 778; Milling Co. v. Highway Com., 190 N.C. 697; S. v.Hardee, 192 N.C. 536; S. v. Colson, 193 N.C. 239; S. v. Mitchell,193 N.C. 797; S. v. Beal, 199 N.C. 298; S. v. Banks, 204 N.C. 237; S. v.Smoak, 213 N.C. 94; S. v. Bowser, 214 N.C. 254; S. v. Roberson,215 N.C. 786; S. v. Hairston, 222 N.C. 462. *Page 326