STATE v. ERIC ROBERSON.

(Filed 16 June, 1939.)

**1. Criminal Law § 41b—**

While the scope of the cross-examination is largely in the discretion of the trial court such discretionary power does not include authority to exclude in its entirety evidence directly challenging the credibility or disinterestedness of the witness.

**2. Same—**

While ordinarily the witness' answers to questions on cross-examination relative to collateral matters are conclusive, this restriction does not apply to questions tending to disclose bias, corruption, prejudice or interest.

**3. Criminal Law § 41g—**

The credibility of a witness is affected by the fact that he is an accomplice in the crime charged and testifies for the prosecution.

**4. Criminal Law § 41b—Exclusion of evidence on cross-examination of witness testifying for the State tending to show that he was an accomplice and that case against him had been nolle prossed held error.**

Upon appeal to the Superior Court from conviction in the municipal court in this prosecution of defendant for operating a lottery, testimony sought to be elicited on cross-examination tending to show that the State's principal witness had been arrested with lottery paraphernalia in his possession, that he was indicted, entered a plea of guilty, and became the State's witness against the defendant, that the officers recommended to the solicitor of the municipal court leniency for the witness and that a *nolle pros* was entered, should have been admitted for the consideration of the jury in determining the credibility of the witness, since even though the *nolle pros* had been already entered against the witness the cause against him could be reinstated and his testimony in the Superior Court might have been influenced by the expectation of leniency, and the exclusion of this evidence, emphasized by the remarks of the court to the jury during the argument, is prejudicial error and entitles the defendant to a new trial.

**5. Criminal Law § 37—**

The best evidence rule does not apply to proof of matters not directly at issue in the trial.

APPEAL by defendant from *Sink, J.,* at November Term, 1938, of FORSYTH. New trial.

The defendant was indicted in the municipal court of the city of Winston-Salem under a warrant which charged that he "did unlawfully and willfully promote, set on foot, carry on publicly or privately a certain lottery where a game of chance is played." Defendant having been convicted and sentenced, appealed to the Superior Court. When

the cause came on for trial in the Superior Court the defendant was again convicted. From judgment pronounced thereon the defendant appealed.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Wettach for the State.*
*Roy L. Deal for defendant, appellant.*

BARNHILL, J. The State's principal witness, Ed Penn, was arrested with lottery tickets and cash on his person. After being confined in jail for some time he implicated a number of other persons, including the defendant, in violations of the lottery statute in carrying on what is popularly known as a "numbers racket." The witness entered a plea of guilty in the municipal court and testified against the defendant and others. He testified that he was selling numbers for the defendant.

While Penn was confined in jail he asked certain lawyers to tell Eric that he, the prosecuting witness, would give him, the defendant, until in the morning and if he didn't come down and get him out on bond he would call all the police and tell them. "I told them if Eric didn't come down tonight and get me out in the morning I will just let them know who the banker is." The next morning he called in certain of the police and gave information against this defendant and others. The defendant and the others were thereupon arrested and put upon trial, charged with operating a lottery.

Penn entered a plea of guilty, became a State's witness, and testified against the defendant and others. On cross-examination he was asked if it was not a fact that after he had testified a *nolle pros* was entered in his case and no punishment was imposed upon him. On objection this evidence was excluded. The record shows the defendant would have answered in the affirmative. In excluding the evidence the court did so upon the theory that the amount of punishment does not impeach the witness. On objection the court likewise excluded an admission of the defendant that at the time he was tried there was a suspended sentence existing against him in the municipal court.

The State tendered the solicitor for the municipal court who testified he made no agreement with Penn that if he would testify against the defendant and others he would *nolle pros* his case. On cross-examination he would have stated, if permitted to do so, that officers had made recommendations to him as solicitor about leniency for Penn, and that the case against Penn was *nolle prossed.*

During the course of the argument of counsel for the defendant in respect to the credibility of the witness Penn he was interrupted by the solicitor who objected to the argument. The court sustained the

objection and instructed the jury as follows: "Gentlemen of the jury, there is no evidence to sustain the argument that there is an arrangement by which the witness Ed Penn is trying to or has worked himself out of a hole." The defendant excepted. Following a further colloquy between the solicitor, counsel for the defendant, and the court, the court stated: "I thought I made it clear on the question of his meting out punishment. I held and instructed the jury there was no evidence he had done so and that argument was (not) proper. There is no evidence to say whether he was fined, imprisoned, turned loose, or what. He specifically denied that he had entered into some kind of agreement." And further: "The court instructs counsel nothing occurred in this trial to justify that argument. The State put on the stand the solicitor from city court down there to show he didn't have an agreement with him. The witness himself denied it and there is no evidence to the contrary." Counsel: "Didn't Mr. Johnson make a statement about the disposition about the case?" The court: "I specifically ruled out what he did also, for two reasons: One is that it is immaterial and another is that a record was made of it and that would have been the best evidence. I specifically ruled it out, or intended to rule it out, all the way through."

Ordinarily, when a witness is cross-examined concerning collateral matters for the purpose of impeachment his answers are conclusive and he may not be contradicted by other evidence. Otherwise, oftentime the trial would be unduly prolonged and the minds of the jury would be diverted from the real matters at issue. *S. v. Patterson,* 24 N. C., 346; 3 Jones on Evidence, 1530 and 1551; *S. v. Robertson,* 166 N. C., 356, 81 S. E., 689. Likewise, the extent of such cross-examination in respect to such matters is within the discretion of the trial court.

This rule does not apply in all its rigor when the cross-examination is as to matters which, although collateral, tend to show the bias, interest, favor, animus, hostility, prejudice, temper, disposition or conduct of the witness in relation to the cause or the parties. His answers as to these matters are not to be deemed conclusive, and may be contradicted by the interrogator. *S. v. Patterson, supra;* 28 R. C. L., 614.

Latitude is allowed in showing the bias, hostility, corruption, interest or misconduct with respect to the case or other facts tending to prove that the testimony of the witness is unworthy of credit. 3 Jones on Evidence, 1538; 5 Jones Commentaries on Evidence, 2nd Ed., 4611; 28 R. C. L., 615. "The doctrine of excluding facts offered by *extrinsic testimony* has never been applied to the subject of bias." 2 Wigmore on Evidence, 2nd Ed., 332.

Cross-examination would be of little value if a witness could not be freely interrogated as to his motives, bias and interest, or as to his con-

duct as connected with the parties or the cause of action; and there would be little safety in judicial proceedings if an unscrupulous witness could conclude the adverse party by his statements denying his prejudice or interest in the controversy.   3 Jones on Evidence, 1534.

For the purpose of affecting the credibility of a witness, he may be cross-examined as to his interest in the event of the suit or the state of his feelings toward the respective parties  .  .  .  his conduct in connection with the cause of action  .  .  .  or collateral facts which tend to show that he is prejudiced or interested.   3 Jones on Evidence, 1536-37; *Newton v. Harris,* 6 N. Y., 345; 5 Jones Commentaries on Evidence, 4612.

The cross-examiner is at liberty and is often compelled to attack the credibility of the witness and, for that purpose, must be allowed latitude in asking questions which would otherwise be irrelevant to the issue. For the purpose of testing the credibility of a witness, it is permissible to investigate the situation of the witness with respect to the parties and to the subject of litigation, his interest, his motives, inclinations and prejudices, and such like.   3 Jones on Evidence, 1526-27.

It bears against the credibility of a witness that he is an accomplice in the crime charged and testifies for the prosecution; and the pendency of an indictment against the witness indicates indirectly a similar possibility of his currying favor by testifying for the State; so, too, the existence of a promise or just expectation of pardon for his share as accomplice in the crime charged.   2 Wigmore on Evidence, 2nd Ed., 350.

While latitude is allowed in showing the bias, hostility, corruption, prejudice and interest or misconduct of the witness with respect to the case or other facts tending to prove that his testimony is unworthy of credit, 3 Jones on Evidence, 1538, the question as to the extent to which the cross-examination may extend is to be determined with a view to the discretion of the trial judge.   Nevertheless, if the latter has excluded testimony which would clearly show bias, interest, the promise, or the hope of reward on the part of the witness, it is error and may be ground for a new trial.   *Alford v. U. S.,* 75 L. Ed., 624; 3 Jones on Evidence, 1538.   The discretionary power of the trial judge is to confine the cross-examination within reasonable limits.   It does not include the authority to exclude altogether questions, and the answers thereto, which directly challenge the disinterestedness or credibility of the witness' testimony.

The defendant sought to prove by the cross-examination of the principal State's witness, Penn, and the solicitor of the county court (and the record shows that he would have done so if the court had permitted

the witnesses to answer) that Penn was arrested, and at the time of his arrest had in his possession lottery paraphernalia; that he was indicted and placed in jail; that the witness entered a plea of guilty and became the principal witness for the State against this defendant; that the officers recommended to the solicitor of the municipal court leniency for the witness; and that, although the witness had entered a plea of guilty, a *nolle pros* was entered in his case, even though there was then pending against him a suspended sentence.

While these facts of themselves do not prove as a matter of law that the witness was unworthy of belief, they seriously challenge his credibility. The defendant had a right to have the jury informed as to these matters and to debate before the jury the effect of such circumstances upon the credibility of the witness. Although the testimony does not constitute direct evidence of any agreement that the witness in return for his testimony would be freed from punishment for his part in the crime committed, the jury might well find that the facts and circumstances were such that the witness testified in the reasonable expectation that he would receive leniency in return for having turned State's evidence and testified against this defendant, and that his testimony, by reason thereof, was unworthy of belief. At least the circumstances vitally affect the disinterested nature of his testimony.

It is true that when Penn testified in the Superior Court a *nolle pros* had already been entered in the case against him, yet, the suspended sentence was still pending and the cause against him could be reinstated, notwithstanding the *nolle pros*. The jury might consider that the witness was unduly influenced in his testimony by these circumstances.

The error in denying the defendant the right to cross-examine the witnesses in respect to these matters was emphasized by the remarks of the court to the jury and to counsel during the argument. The statement that the solicitor of the municipal court had testified that he had made no promise to the witness and that the witness had testified that there was no agreement, and that "there is no evidence to the contrary," was in effect a statement that the testimony of Penn was to be considered as that of a disinterested witness, who was unimpeached.

The evidence the defendant sought to develop by cross-examination was not immaterial, as the court stated in the presence of the jury, and although the *nolle pros* was entered in writing as the judgment of the court, it was not necessary for the defendant to produce it. It was not directly at issue in the trial and the best evidence rule did not apply.

There is other evidence in the record against this defendant and the testimony as a whole, if believed and accepted by the jury, is amply sufficient to support a conviction. Even so, the error in denying de-

fendant's counsel the right to cross-examine the witness Penn and the solicitor of the municipal court in the respects indicated and to argue that the facts which would have been developed thereby materially affected Penn's credibility was prejudicial error, which entitles the defendant to a

New trial.