STATE OF NORTH CAROLINA v. MARY WINECOFF

No. 11

(Filed 28 January 1972)

1. **Homicide § 16— instructions — dying declarations — consideration by by jury**

    It is not prejudicial error for the trial judge to fail to instruct the jury that dying declarations should be considered with caution absent a request for such an instruction.

2. **Homicide § 15— testimony that witness sold shotgun to defendant**

    In this homicide prosecution, the trial court properly admitted testimony that about six months prior to the crime the witness had sold defendant a single barrel 12-gauge shotgun which was found in a woodpile at defendant's home; even if erroneously admitted, such testimony was not prejudicial to defendant, but tended to prejudice the State's case, since an eyewitness testified that a double barrel shotgun was used in the shooting and the trial court refused to admit the single barrel shotgun in evidence.

3. **Homicide § 24— instructions — reduction of crime to manslaughter — burden on defendant — expression of opinion**

    The trial court in this homicide prosecution did not express the opinion that defendant was the person who inflicted the fatal wound in its instructions upon the burden of defendant to reduce the offense to voluntary manslaughter.

APPEAL by defendant from *Gambill, J.,* 1 October 1970 Session of CABARRUS Superior Court.

Defendant was charged in a bill of indictment with the murder of Frank Winecoff, Jr. The State elected to try her for the lesser included offense of second degree murder. Defendant entered a plea of not guilty.

State v. Winecoff

The State's evidence, except where quoted, is summarized as follows:

Robert Roseboro testified that he went to Frank Winecoff's home about 10 o'clock a.m. on Sunday, 19 April 1970. He went into the kitchen, where he sat and talked to Frank for about thirty minutes. He testified: "I did not see Mary Winecoff at the time, she was in the back room. I was there about one-half hour before I saw her. She came out of the back room into the room I was in. She was arguing with Frank, just fussing at him. She did not say anything when she first came out; she went back in and came out again and had a gun—a double barrel, what I call a shotgun. I do not know what she was quarreling at her husband about; they had been out that morning and came back in, and I was not there. When she came back out of the room with the shotgun, she just told him she'd blow his brains out and throwed it up at him and shot him. He was still in the kitchen; they were about as far apart as you and me—I do not know how far in feet. She shot one time. She did not say a thing. He was sitting down. Frank Winecoff, Jr., did not say a thing. I went next door and told the people to call up the ambulance and the cops because he was shot. Some officers arrived; Mr. Atwood was one."

Captain Ray Atwood of the Cabarrus Sheriff's Department, testified that he went to the Winecoff home on 19 April 1970 pursuant to a call received about 12:15 p.m. When he arrived, Frank Winecoff was lying on the kitchen floor and defendant was standing in the living room about 12 feet away. We quote an excerpt from Captain Atwood's direct testimony:

When I arrived at the Winecoff home Frank Winecoff, Jr., was alive. He made a statement to me at that time.

Q. What statement did he make?

OBJECTION      OVERRULED      EXCEPTION

EXCEPTION NO. 1.

When I went in Frank was lying on the kitchen floor partially under the table beside a turned over chair. I spoke and Frank said, "Mr. Atwood, please help me, I'm dying." I asked what happened. He said, "Mary shot me," no, he said, "My wife shot me." I told him that we had an ambulance on the way, to lay still, that the more he

moved, the more he bled. He was lying on his right side and he had a hole about two inches across under his ribs. Some of the flesh was out over his clothes. He was bleeding a good bit at that time.

On cross-examination Captain Atwood testified that defendant Winecoff was "pretty high" and that she first told him her husband had not been shot, and that he was sick. She later said that Robert Roseboro shot him.

Captain Atwood identified a single barrel shotgun as the gun found in a woodpile at the Winecoff home.

R. M. Faggart testified, over objection, that on 24 October 1969 he sold to Mary Winecoff the 12-gauge single barrel shotgun marked as Defendant's Exhibit "A." The court refused to admit the shotgun into evidence.

Dr. William J. Reeves testified that on 19 April 1970 he performed an autopsy on the body of Frank Winecoff, Jr., and that in his opinion Frank Winecoff, Jr., died as a result of wounds caused by shotgun pellets which penetrated his stomach and liver.

Defendant offered no evidence.

This case is before us pursuant to our general referral order effective 1 August 1970.

*Attorney General Morgan and Assistant Attorney General Icenhour for the State.*

*James C. Davis and Clarence E. Horton, Jr., for defendant.*

BRANCH, Justice.

Defendant contends that the trial judge committed prejudicial error in failing to charge that the jury should receive the alleged dying declarations of Frank Winecoff, Jr., with caution.

Defendant did not specifically request such instructions.

In the case of *State v. Collins,* 189 N.C. 15, 126 S.E. 98, it is stated:

The eleventh exception, which relates to the instruction pertaining to the alleged dying declarations of the

deceased, is not tenable. We have held that the evidence as to these declarations was competent; and while the court might properly have told the jury to consider this evidence with due caution, the failure to do so in the absence of a special request will not be held for reversible error. We have repeatedly said that as to subordinate features or particular phases of the evidence proper request should be made for appropriate instructions. *S. v. O'Neal*, 187 N.C. 22.

Defendant cites and relies on the cases of *State v. Williams*, 67 N.C. 13, *State v. Kennedy*, 169 N.C. 326, 85 S.E. 42, and *State v. Whitson*, 111 N.C. 695, 16 S.E. 332, as authority to support his contention. These cases are distinguishable.

The case of *State v. Williams, supra*, contains the equivocal statement that "Several eminent judges have felt it a duty to say that they [dying declarations] should be received with much caution, and that the rule which authorizes their admission should not be extended beyond the reasons which justify it." The quoted statement is dicta since the statement was directed only to the admissibility of dying declarations and to the reasons for receiving such declarations. The case did not consider or turn upon proper cautionary instructions to the jury. In each of the remaining cases cited by defendant a specific request was made for the cautionary instruction.

[1] We conclude that when request is made for such instruction, the judge must instruct the jury to receive a dying declaration with caution. *State v. Whitson, supra; State v. Kennedy, supra; State v. Williams, supra*. Absent such specific request, it is not prejudicial error for the trial judge to fail to give a cautionary instruction as to dying declarations. *State v. Collins, supra; State v. O'Neal*, 187 N.C. 22, 120 S.E. 817.

This assignment of error is overruled.

[2] Defendant assigns as error the admission into evidence of statements by the witness R. M. Faggart that on 24 October 1969 he sold her the single barrel 12-gauge shotgun which was marked State's Exhibit "A."

It is well settled in this jurisdiction that in a criminal action any object having a relevant connection with the case is

admissible in evidence. *State v. Jarrett,* 271 N.C. 576, 157 S.E. 2d 4.

In the case of *State v. Macklin,* 210 N.C. 496, 187 S.E. 785, it is stated: "It was competent to show the possession of a shotgun by defendant about the time of the homicide . . . . " State's Exhibit "A" was found in the woodpile at the Winecoff home with a discharged shell in it on the same day that deceased was shot. The testimony that defendant had purchased this very gun within a period of approximately six months was relevant and was properly admitted. Assuming, *arguendo,* that the evidence was erroneously admitted, defendant has failed to show that such error was prejudicial. The burden is on defendant not only to show error, but also to show that the error complained of affected the result of the trial adversely to her. *State v. Woolard,* 260 N.C. 133, 132 S.E. 2d 364; *State v. Mumford,* 252 N.C. 227, 113 S.E. 2d 363.

Under the circumstances of this case the admission of the challenged evidence appears to favor defendant. This evidence shows that the gun sold to defendant was a single barrel gun. The eyewitness to the shooting testified that a double barrel gun was used to inflict the wounds. This evidence, particularly when considered with the trial judge's refusal to admit the shotgun into evidence, tends to create confusion in and prejudice to the State's case rather than defendant's.

For reasons stated, this assignment of error is overruled.

[3] Defendant next contends that the trial judge erred in his charge by expressing the opinion that defendant was the person who inflicted the fatal wound. She specifically points to the following portion of the charge:

To reduce the offense of voluntary manslaughter, the defense must satisfy you of three things from the evidence offered by the defendant, or evidence offered by the State: First; Did the defendant kill the deceased? Second: Did she kill him intentionally? Third: Did she kill him unlawfully in the heat of passion by reason of anger suddenly aroused, and before such time had elapsed for passion to subside and reason to resume sway and habitual control?

Prior thereto the trial judge had charged:

Under our system of justice when a defendant pleads not guilty, he or she is not required to prove his or her

State v. Winecoff

innocence, they are presumed to be innocent. The State must prove to you that the defendant is guilty beyond a reasonable doubt.

. . . .

The State must prove beyond a reasonable doubt that the defendant intentionally shot, in this case, shot Frank Winecoff, Jr., with a deadly weapon and that Frank Winecoff died as a natural and probable result of such act.

In his final mandate to the jury the Judge instructed as follows:

I charge you, ladies and gentlemen of the jury, if you find from the evidence and beyond a reasonable doubt that on or about the 19th day of April, 1970, the defendant, Mary Winecoff, intentionally shot Frank Winecoff, Jr., with a deadly weapon, to wit, a shotgun; and that Frank Winecoff's death was a natural and probable result of the shot or act of Mary Winecoff, it would be your duty to return the verdict of guilty of second degree murder unless from the evidence you are satisfied that she killed, that is Mary Winecoff killed Frank Winecoff, Jr., in the heat of a sudden passion, which was produced by the acts of Frank Winecoff which had the natural tendency to produce said passion in the defendant, and this passion continued until she killed Frank Winecoff, in this case it would be your duty to return the verdict of guilty of manslaughter.

If the State has failed to prove from the evidence beyond a reasonable doubt that the defendant intentionally shot and killed Frank Winecoff or that Frank Winecoff's death was a natural and probable result of Mary Winecoff's act, it would be your duty to find the defendant not guilty.

So in this case you may return one of three verdicts. You may find the defendant guilty of second degree murder, manslaughter, or not guilty.

"The judge's words may not be detached from the context and the incidents of the trial and then critically examined for an interpretation from which erroneous impressions may be inferred." *State v. Alexander,* 279 N.C. 527, 184 S.E. 2d 274.

While we do not approve the interrogatory form of the charge challenged by defendant, we do not find in it an expres-

sion of opinion prejudicial to defendant. A contextual reading of the entire charge reveals a clear statement of the law regarding second degree murder and manslaughter, properly applied to the facts of the case. *State v. Rummage, ante,* 51, 185 S.E. 2d 221; *State v. Barrow,* 276 N.C. 381, 172 S.E. 2d 512; *State v. Todd,* 264 N.C. 524, 142 S.E. 2d 154; *State v. Gordon,* 241 N.C. 356, 85 S.E. 2d 322.

Nor do we find merit in defendant's contention that the trial judge erroneously submitted the charge on manslaughter to the jury. There was ample evidence to support a verdict of manslaughter.

A careful examination of this entire record discloses no prejudicial error.

No error.